NEW-YORK,
Nov. 1810.

JACKSON
v.
MURRAY.

</div>

Rule granted.

JACKSON, *ex dem.* STOUTENBURGH and others, *against* MURRAY.

THIS was an action of *ejectment*, for land in the city of *New-York*. It was tried at the sittings in *New-York*, in *June*, 1809, before Mr. Justice *Spencer*.

The plaintiff, in support of his title, gave in evidence *letters patent* from governor *Nicholls*, dated 26th *January*, 1667, which recited a former *Dutch* patent, granted by Governor *Kieft* to *Henry Piers*, of a piece of land, with a plantation thereon, upon the island of *Manhattan*, commonly called *Gregory's Plantation*, " stretching between *Peter Lynde's* plantation, and the creek or kill *there* where the water runs over the rock, containing in breadth, towards the *East River*, seventy-five rods,

The boundary of the tract of land on *New-York* island, called *Gregory's Plantation*, is not to be construed to extend *west* of the old *Harlaem* road.

Where an agreement for the sale and conveyance of a piece of land, dated in 1689, was produced in evidence, the jury were allowed, in 1809, to presume a conveyance pursuant to the agreement.

An old patent or grant, after the lapse of 160 years, will not be allowed to be located, or extended beyond the *actual* and notorious possession and location of the party, especially where there is the slightest evidence of an adverse possession for above 20 years.

In all cases of any uncertainty in the *location* of patents and deeds, courts hold the party to his actual location.

Government is never to be presumed to grant land twice; and where K., who purchased, in 1689, land granted to S. in 1667, took out a patent in 1671, which included land said to be covered by the first patent, the persons deriving title under K. were estopped to say, that the location of the first grant extended so as to include any part covered by the second patent.

then going by the river north-east and south-west, so into the woods, north-west and south-east, to the fence of a certain plantation, known by the name of the *Schepre's Plantation.* It is in length to the said creek or kill, one hundred and eighty-seven rods and five feet ; then along between *Peter Lynde's* and *Gregory's,* one hundred and ninety rods, and behind, into the woods, in breadth, seventy-five rods ;"—" which said patent, or ground brief, being dated the 15th *May,* 1647, was, upon the 28th *March,* 1651, with the knowledge and consent of the governor, made over by the said *Henry Piers,* unto *Peter Stoutenburgh,*" &c. and the same was confirmed, by the new patent, to *Peter Stoutenburgh,* his heirs, &c.

The plaintiff also gave in evidence two papers in the *Dutch* language, and a map, found in a trunk of the deeds and documents of the *Kip* family ; one of which was a paper dated 29th *December,* 1679, signed by *Peter Stoutenburgh* and *Jacob Kip,* concerning the leasing of the land, &c. west of *Kip's* land, and east of the land of *William Beekman,* called *Peter Van Lind's Plantation,* to the said *Kip* for eight years, at ten guilders a year. The other paper between the same parties, was dated *March* 25th, 1688—9 and related to a purchase of the same land, for 1,400 guilders. These papers were translated by Mr. *Van Ingen* of *Albany,* who had been employed to translate the *Dutch* records in the office of the secretary of state. The *map* was dated the 29th *June,* 1699, and purported to have been made by *Augustus Graham,* surveyor-general of the colony of *New-York.* The map was proved by *Charles Clinton,* a surveyor, who had frequently seen maps purporting to be made by the same surveyor-general. This evidence was objected to, but admitted by the judge. The plaintiff also proved, by two surveyors, the existence of an *ancient fence,* which had been, immemorially, a partition fence between the tracts of *Stoutenburgh* and *Beek-*

*man*, and which was crooked in different places, so as to vary its course several degrees. The same witnesses also proved the existence of a remarkable rock, near the mouth of a creek running from a pond near the premises in question, to the *East River;* near which rock, the water of the creek runs into the river; and that it answers the description of the rock mentioned in the *Dutch* patent, better than any other, and, in their opinion, was, no doubt, the rock intended; though there are several other places in the creek, where the water runs over the stone, in a remarkable manner. That in locating *Stoutenburgh's* premises, reference was had to the *ancient fence*, as an established boundary, and to the said *rock*, as a fixed object; and the courses and distances corresponded with that located in the patent, which, the surveyors were of opinion, was the only true location; and that according to this location, made with peculiar care, the premises in question were included within the patent to *Stoutenburgh*.

The plaintiff further proved, that all the land lying east of the fence on the highway, had been enclosed, and in the possession of the *Kip* family, from time immemorial. The heirship of *Kip*, one of the lessors, was also proved. *Abraham Van Gelder*, aged 92 years, a witness, stated that old *Samuel Kip* made bricks near the pond; but he could not testify that the *Kip* family exercised any acts of ownership over any lands lying west of the *Harlaem* road.

The defendant then moved for a nonsuit, which was refused by the judge, on the ground that the jury might presume a grant from *Stoutenburgh* to the ancestor of *Kip*, the lessor, for all the lands included in his patent, though he appeared to have possessed only a part of them.

The defendant then showed title under the corporation of *New-York*, partly by a deed in fee, dated 25th *Fe-*

*bruary*, 1799, and partly by a lease, dated the 8th day of *November*, 1803, for the term of 21 years.

The defendant also gave in evidence the charter of the city of *New-York*, of 1730, reciting the former charter granted by Governor *Dongan*, dated the 22d *April*, 1686, in which a grant is made to the corporation of all the waste, vacant, unpatented and unappropriated lands, within the city, and on *Manhattan* island; also a map of thirty-one lots, and a sale at auction of the leases of the lots, made by order of the corporation, in *July*, 1763; but no possession was taken of the lots, until after the sale to the defendant, in 1799. It was also proved, that the highway, or *Harlaem* road, had run as it now does, for more than sixty years; and that the fence of *Kip* was on the east side of the road during that time, and the south-west corner of the fence did not come up to the road. That many persons made bricks round the pond, before the war. Two surveyors made a map of a survey, locating the patent of *Van Linden* and *Piers*, which corresponded with the defendant's map.

The defendant also gave in evidence, a patent, in 1671, to *Jacob Kip*, under whom the plaintiff claimed, for a piece of waste land, bounded on the north-west side by the old highway, and between the land of *Holmes* and *Peter Stoutenburgh*, and bounded on the north-east and south-west sides, by two small creeks or kills, &c. and also several old maps, &c.

The defendant contended, 1. That the corporation of *New-York* had been in possession of the premises in question, more than 20 years before the commencement of the present suit; 2. That the patent to *Stoutenburgh*, did not include the premises. On the part of the plaintiff, it was insisted, that the patent to *Stoutenburgh* did cover the premises; and that no adverse possession had

been shown, sufficient to bar the plaintiff's right of re-
covery.

The judge charged the jury, that he did not think
such a possession was proved in the corporation of *New-York*, or their assigns, as would toll the entry of the
lessor of the plaintiff, if he had shown a title, though
this title had remained dormant, and no actual possession
in the lessors proved; that if the survey of *Graham* was
considered as exhibiting the measure that was in use,
the patent to *Stoutenburgh* would, in the south part, ex-
tend to the east of the *Harlaem* road; that if the transac-
tion was recent, he should incline to this construction;
and think the patent might be rolled out; but there was
one fact in the case, in favour of the defendant, which,
in his opinion, ought to control the verdict. The go-
vernment could not be presumed to grant land twice; that
the grant to *Kip* for all the land between the creeks, was
only four years after the grant to *Stoutenburgh*, and pur-
ports to be founded upon a survey of the surveyor-ge-
neral, and covers all the land claimed by the plaintiff's
construction, lying north of the lower creek, and east
of the *Harlaem* road.

The jury found a verdict for the plaintiff.

A motion for a new trial was made, on the part
of the defendant, on the following grounds.

1. That the plaintiff is not entitled to recover, be-
cause he does not show a title from *Henry Piers*, the
original patentee, to *Stoutenburgh*, under whom the
plaintiff claims.

2. That the plaintiff shows no conveyance from *Stout-
enburgh* to *Kip*, through whom he derives his title.

3. The plaintiff proves no possession, or right of en-
try, within twenty years; but on the contrary, the de-
fendant shows an adverse possession.

4. That the grant to *Piers*, or the confirmation to
*Stoutenburgh*, includes no part of the premises in ques-
tion.

5. That the grant to *Beekman*, and the map, purporting to be made by *Augustine Graham*, ought not to have been admitted in evidence.

6. That the verdict is against law and evidence.

*Colden* and *Hoffman*, for the defendant.

*Harison* and *Emmet*, for the plaintiff.

KENT, Ch. J. delivered the opinion of the court. The lessors of the plaintiff have shown a title under the patent of Governor *Nicholls*, in 1667, to the lands covered by the former *Dutch* patent, and known by the name of *Gregory's Plantation*. There was abundant reason for the jury to presume a conveyance from *Stoutenburgh* to *Kip*. On that point there can be no controversy. The great point is, the location of the patent. If it was a recent case, and we were to follow the words of the patent, I might, perhaps, concur in the location of the plaintiff; but there are several strong reasons why we ought, at least, to doubt, and why we ought not, at this late day, to admit the claim of the plaintiff. The old *Dutch* patent speaks of the plantation as stretching between *Peter Lindo's* plantation, and the creek or kill, and that it was in length " to the said creek or kill," 187 rods, &c. It no where speaks of crossing the creek, but the creek is twice mentioned, as being an exterior boundary. There is also a great uncertainty as to the real extent or kind of measure used and intended in the grant, and as to the commencement of *Lindo's* patent at the mouth of the *Ouder-rack* creek. The ancient fence between the *Lindo* and *Gregory* plantations, was very crooked; and nothing can be more vague than a place on the creek, " where the water runs over the rock." To undertake now, to locate so vague a description as that contained in this *Dutch* patent, issued above 160 years ago, and to carry that location *further*

than the parties in interest had ever located it, by any actual *pedis possessio*, or mark of ownership, from its date to this day, appears to me to be dangerous and inadmissible. The parties ought not now to go beyond their ancient fences, or actual and notorious location; and especially, if there has existed the slightest marks of adverse possession, for above 20 years, on the ground to which they now wish to advance. In this case, the sales by the corporation, in 1763, were acts of ownership of lands lying west of the old *Harlaem* road, and now covered by the plaintiff's location. That the persons under whom the lessors claim never carried their actual possession west of the old road, is a fact beyond dispute. This ought, in such a case as the present, to be considered as a practical location of the patent, by the party who claimed under it.

In all cases of any uncertainty in the location of patents and deeds, courts hold the party to his *actual* location; and we cannot admit of such an excuse as "a remarkable inactivity and negligence" in the ancestor. Every difficulty, and every doubt, ought to be turned against the party who now attempts to push his location beyond the road, after having, for such an enormous lapse of time, confined the actual location to the east side of it. As to the N. E. side of *Gregory's* plantation, we are necessarily deprived of evidence of the location which the parties would have originally given to it, from the circumstance that *Kip*, who purchased this plantation from *Stoutenburgh*, had already taken a patent for land lying over the creek. This fact appears to me, as it did to the judge at the trial, of decisive weight in the controversy. The government, in 1671, and all parties in interest, knew better, at that day, than we can pretend to know, what was the true location of *Gregory's* plantation. The premises lay almost under the daily observation of the government, and of the claimants. The original patent, in 1647, was of a

piece of land then known and distinguished as *Gregory's* *Plantation*, and it probably then had its bounds on the *East River*, designated by notorious occupancy. The very term used denoted an inhabited spot; and 20 years afterwards, when the notoriety of the plantation and of its bounds, must have increased, the patent of confirmation uses the same description. After this we find the ancestor of the plaintiff, suing out a patent for a piece of waste land, lying between *Holmes's* land and this very plantation of *Gregory*, and bounded on the N. E. and S. W. sides, " *with two small creeks or kills*, and on the N. W. by the old highway." It is manifest that this tract was bounded on the S. W. side by the patent of *Stoutenburgh*; and yet it is described to be bounded by a creek; a decisive proof that *Gregory's Plantation* was not then understood to pass the creek, however plausible the contrary construction may now appear.

Upon the whole, the attempt now, for the first time, to extend *Gregory's Plantation* west of the old *Harlaem* road, is not to be permitted; and the verdict ought to be set aside, and a new trial awarded, with costs to abide the event of the suit.