GRAND-ISLE,
January,
1831.

UNIVERSITY OF VERMONT *vs.* EXECUTOR OF ELISHA REYNOLDS.

In the year 1781 a charter was obtained under the authority of the state, granting to a number of persons a township of land, reserving *one seventieth part* of the tract for the use of a seminary or college. The proprietors not having made any division of the lands under the charter, nor successfully asserted their claim to them, the whole town was afterwards settled and occupied by other persons, none of whom claimed or held under the original grantees. In an action of ejectment, brought by the trustees of a university, afterwards founded, who were empowered to take possession of the land so reserved, against one who had been in uninterrupted enjoyment of a portion of the lands granted about thirty eight years previous to the commencement of the action, holding adversely to all other persons, it was held,

That the land thus reserved was held in common with all the lands in said town, and that the plaintiffs might maintain ejectment against any of the inhabitants to recover the share which had been reserved for their use;

That the provision in the statutes of limitation, exempting from their operation all lands granted, sequestered or appropriated, to public, pious and charitable uses, extended to the case in question; but,

That from the length of time the defendant had been in possession, the jury might, and ought to, presume in his favor, either an antecedent grant, or a surrender of the charter under which the plaintiffs claimed, or an extinguishment of any title which ever could have been derived under it; and

That the court ought so to have instructed the jury.

This case was an action of *ejectment*, commenced in 1821, to recover lots no. 98 and 99 in the town of Alburgh, in which the plaintiffs declared on a seizin in fee for the whole of those lots. The plaintiffs claimed title to the demanded premises by virtue of a charter obtained under the authority of the state of Vermont, dated February 23d, 1781, granting to Ira Allen, and his associates, a tract of land therein described, and incorporating it into a township, called Alburgh, and granting to the proprietors and inhabitants thereof all the privileges and immunities which were enjoyed by the inhabitants of other towns in the state. By this charter five *seventieth parts* or rights of said township were reserved for particularly specified purposes: one right for the use of a seminary or college; one for the use of county grammar schools; one to be and remain for the settlement of a minister or ministers of the gospel in said town; one for the support of the social worship of God; and one for the support of an English grammar school in said town. The right for the use of the seminary or college, and the right for the use of county grammar schools, with the improvements, rents, interests and profits arising therefrom, were to be under the controul and disposal of the General Assembly of the state forever. And the proprietors of said township were thereby authorized and empowered to locate said two rights equitably, quantity for quality, in such parts of said town as they might judge would least incommode the general settlement of said tract. There was a condition contained in the charter to this effect: that each proprietor, his heirs or assigns, were to plant and cultivate five acres of land, and build a house at least eighteen feet square, or have one family settled on each right, within three years next after the circumstances of the war, in which the country was then engaged, would admit of a settlement with safety, on penalty of forfeiting to the state each respective right not so improved and settled. This forfeiture was never claimed by the state. On the 2d day of November, 1791, the University of Vermont was founded; and by the act of incorporation the trustees were empowered to take charge of, lease, rent, and improve, &c. all such grants of land as had already been made by the state for the use of a college.

GRAND-ISLE,     On the trial in the county court it appeared in evidence, that
*January,*
1831.    prior to the year 1785 the town was plotted, and, not many years
University of Vt. after, was, by direction of Ira Allen, surveyed ; and the lines
*vs.*
Reynolds' ex'r. run through the whole town ; that the lots were designed to be
one hundred acre lots ; and that every lot in the town was claim-
ed and owned by some person, though there were some lots which
were not improved nor cultivated.   The plaintiffs tendered evi-
dence to prove that no person held any land in Alburgh under an
original proprietor ; to which the defendant objected.   The ob-
jection was overruled, and the evidence admitted, from which it
appeared that there was no lot possessed or held under any of the
proprietors named in the charter.

It was admitted that the defendant's testator, and those under
whom he claimed, had been in possession of the premises demand-
ed, ever since the spring of the year, 1785, claiming the same
in their own right, and adversely to all the world.   The defendant
produced in evidence a deed from Asa Gardner, acknowledged
December, 16, 1796, granting to him lot no. 99 ;  and another
deed from Joseph Sowles, dated September 14, 1796, granting
to him lot no. 98.

It was contended by the defendant, 1st. That it ought to ap-
pear from the declaration how the plaintiffs claimed, whether as
tenants in common, or in severalty.

2d. That the defendant had a complete title by the statute of
limitations.

3d. That the exceptions in the statute respecting public rights,
&c., did not apply until such rights were severed.

4th. That from the great length of time the town had been set-
tled, and the defendant's testator been in possession, it was to be
presumed that the college-right had been set off by the proprie-
tors as directed by the charter.

5th. That if the college-right had not been set off, it was in-
cumbent on the plaintiffs to cause a severance before an action of
ejectment could be maintained.

6th. That if the college-right was not severed, it could not ex-
tend through the town ; the charter having directed a particular
location.

7th. That before the plaintiffs could maintain ejectment, they
must demand of the proprietors to set out this right, and locate
it agreeably to the provisions of the charter.

8th. That, as tenants in common, the plaintiffs could not sue to
be let into possession without a demand.

9th. That no action will lie by one proprietor of a town against another proprietor, to obtain possession, until there is a severance.

10th. That the jury ought to presume a title in the defendant's testator after thirty eight years adverse and peaceable possession.

A verdict was returned for the plaintiffs to recover *one seventieth part* of the premises demanded, with one cent damages and their cost, under a rule, that if the verdict be set aside, judgement should be rendered for the defendant to recover his costs. The defendant having filed exceptions, the case was reserved for the opinion of this Court.

*Royce and Smalley, for the defendant.*—I. The plaintiffs claim title to one undivided 70th part of the premises demanded as tenants in common with the defendant ; and, in support of this claim, rely on the charter granting the town of Alburgh to sixty-five proprietors, reserving for certain public uses five-seventieths of the same, and the act incorporating the University of Vermont, and granting to that corporation the use of one-fifth part of the lands thus reserved. By this claim the plaintiffs admit that they and the defendant's testator were co-proprietors, and,therefore, as they insist, tenants in common. But the defendant insists that the proprietors of towns do not stand in the relation of tenants in common to each other. Tenants in common must join in all personal actions where the profits of the land, or some indivisible thing, is in question.—1 *Swift's Dig.* 102, 103; *Hammond on Parties,* 44; 3 *Bac. Ab.* 706; *Cro. Jac.* 231.

Will it be pretended that a proprietor in possession, before a division, cannot maintain trespass against a stranger without joining all his co-proprietors? The possession of a proprietor, as such, is necessarily adverse and exclusive, both before and after severance. From which it results that one proprietor cannot, even after demand and refusal, support ejectment against another for a commonage.—*Britton* vs. *Lawrence and Clark,* 1 *D. Chip.* 103.

Proprietors have rights and privileges which tenants in common have not ; and these rights were well known and understood at the time of granting the charter.—*Old stat.* 293, *Act of* 1779 ; *do.* 323, 124, 143; *Act of* 1787, *sec.* 5, (*Old stat.*) By these acts the majority of the proprietors could vote to a settler his lot in lieu of his draft, and grant a proprietor liberty to pitch. All

GRAND-ISLE, these powers are inconsistent with the right of tenants in common.
*January*,
1831.   See *act of* 1787, *(Old stat.* 107.)

University of Vt   If private proprietors, before a division, may, as between them-
*vs.*
Reynolds' ex'r. selves, be considered tenants in common, yet they and the public cannot be so treated. The public right, when no particular mode of location is pointed out by the charter, cannot be located by pitch, but must be by draft, and the agents of the public cannot interfere with these rights until they are located.

II. But granting, argumentatively, that under those charters, where the division of proprietory rights is left to be regulated by the general statutes on this subject, one proprietor may maintain an action of ejectment against a co-proprietor as a tenant in common, it is insisted that the plaintiffs in this case are not proprietors at large through the town. The charter directs that this right shall be located in such manner as the proprietors should judge would least incommode the settlement of the township. The location of this right is made a condition precedent to the rights of enjoyment or possession by the college.

It is said by the plaintiffs, that the proprietors were authorized and directed by the charter to locate the land belonging to their right, and that they have neglected so to do. Admit it. The proprietors have neglected their duty. But are the plaintiffs, because they have been deprived—through the neglect of the proprietors—of a particular right, which was given them by the charter, to acquire under this charter another and different right, which was not given? Have they the power of substituting any right which they may claim for the one they have lost? If the plaintiffs have lost any right, it is by their own neglect. They have slept for forty years, without, as they say, taking any measures to compel the proprietors to locate their land; and as a compensation for this neglect, they now ask, not that their lands may be located, not that they may have a lot of wild land, but that they may have an undivided 70th part of all the lands, with the buildings and improvements thereon, and this too without paying any thing for those improvements.

If the plaintiffs are proprietors at large through the town, and, as such, tenants in common, they may remain so to the end of time. The legislature have always exempted public lands from taxation; and are there not infinite difficulties in carrying the several statutes relative to taxes into effect while the lands are thus situated? The proprietors were directed by the charter to locate this land: if they neglected to do so, and the rights of the state

were thereby prejudiced, the charter might be vacated or repeal-
ed.

III. The plaintiffs are barred by the statute of limitations. By
the act of October 27, 1785, (*Old stat.* 87 *and* 90, *sec.* 10,) the proviso in that act relates only to preceeding provisions, and does not affect the subsequent limitations. By the statute of March 10, 1787, (*Old stat.* 91,) there is no exception or proviso applicable to this subject. The act of 1797 does not prevent the act of 1787 from continuing to run.—*Stat.* 291, *sec.* 13. The act of 1787 attaches to the possession of the defendant, though commenced before the passing of the act, which is to be liberally construed. This act is not affected by the act of 1801, (*Stat.* 292,) which applies only to the act of 1797. Under the statute of 1787, the defendant's title was perfected in the spring of 1802. If the statute did not begin to run until after the college was incorporated in 1791, the restraining acts of 1802 did not prevent the defendant's title from becoming afterwards perfected.—*Bal. Lim.* 60.

The language of the statute is sufficiently broad to cover the rights of the state ; and the state must be barred unless there is some unyielding rule of law that exempts those rights from its operation. We have adopted the common law so far as it is applicable to our local situation and government, &c. But with the common law we have not adopted the maxim of *nullum tempus occurrit regi.* This maxim arose out of the King's prerogative ; and no reason can be given for its adoption, that will not apply with equal force to many other maxims relative to the King's prerogative. Such as his prerogative right in swans and royal fishes, (4 *Bac. abr.* 157 ;) and in wrecks, (4 *Bac. abr.* 158.)

On examining the English authorities it will be found to be laid down as a general rule, that,where an act of parliament is made for the public good, the advancement of religion and justice, and to prevent injury and wrong, the King shall be bound, though not particularly named. To take this case out of the operation of this rule, the plaintiffs must satisfy the Court that the statute of limitations was made for the promotion of public evil, and the perpetuating of injury and wrong. But admitting that the statute of limitations will not run against public lands, yet those lands must be located before they are exempted from the operation of the statute.

IV. From the great length of defendant's adverse and peaceable possession it should have been left to the jury to presume a ti-

GRAND-ISLE, tle in the defendant. The old doctrine of prescription has given place to the modern doctrine of presumption, and at this day all rights of action are subject to a legal bar by limitation, or, where there is no statute of limitation, to a presumptive bar. The reason why the English writers hold the doctrine to be applicable only to incorporeal rights, is, because their statute of limitations extends to every thing else. They do extend it to lands where there is no statute of limitation.—*Mayor of Hull* vs. *Horner,* Cowp. R. 102 ; *Powel* vs. *Millbank,* 1 T. R. 399 ; *Eldridge* vs. *Knott,* Cowp. R. 214, 217 ; *Read* vs. *Brookman,* 3 T. R. 158 ; *Holcroft* vs. *Heel,* 1 B. & P. Rep. 400 ; *Johnson* vs. *Ireland,* 11 East, 280 ; *Parker* vs. *Baldwin,* 11 East, 488 ; *Bunce* vs. *Wolcott,* 2 Conn. 27 ; *Sumner* vs. *Child,* 2 Conn. 607 ; 1 Bay Rep. 26 ; 3 Johns. Cases, 109 ; *Gray* vs. *Gardner,* 3 Mass. R. 399 ; *Towner* vs. *Sadler,* 2 Hen. & Mum. R. 370 ; *Jackson* vs. *Pratt,* 10 Johns. R. 380 ; *Jackson* vs. *McCall,* 10 Johns. 337 ; *Coolridge* vs. *Learned,* 8 Pick. R. 509 ; *Shumway* vs. *Simons,* 1 Vt. Rep. 53. In these cases the courts clearly recognise the doctrine that a title in the defendant may be presumed, and this on the principle of quieting an ancient possession. Whether the charter in this case is considered as conveying to the proprietors the fee of this land in trust, reserving to the state the power of appointment, or as excepting an undivided portion out of the grant, is, for the purposes of this question, a matter of indifference to the defendant. If this charter merely reserved to the state the power of appointing the use of this right, then it is to be presumed they have executed that power, before the college was incorporated, by vesting the use in the defendant : but if it is to be treated as an exception, then the fee of this right was in the state ; and the presumption is, that the state by resolution of the legislature, or otherwise, granted the town to those under whom the defendant claims. In either point of view, there is nothing to prevent the presumption of a grant by the state, as they alone had the power of disposing of this right from 1781, when the charter was granted, to 1791, when the college was incorporated ; and this presumption is strengthened by the fact that between 1781 and 1791, and when those under whom the defendant claims were in possession, the legislature granted lands by resolution without any formal act or charter, and those grants were confirmed by an act of the legislature passed for that purpose in 1789.—*Old stat.* 253. That such a grant should have been made by a resolution, and lost, is not any way extraordinary, when it is

*January, 1831.*

*University of Vt vs. Reynolds' ex'r.*

recollected that all the statutes passed in 1777 are not now in existence; and many of the journals of the legislature, where alone these resolutions were recorded, are not now to be found.

The act incorporating the college in 1791, does not in the least rebut this presumption; for it will be noticed, that this act does not point out these particular lands, but is a general conveyance of all lands appropriated for the use of a college; so that if these lands, after the charter and before the act of incorporation, had been appropriated to another purpose, as they legally might have been, the college under their general grant would have no title to them.

The evidence ought to have been submitted to the jury from which they ought to have presumed a surrender of the charter, and, therefore, an extinguishment of the plaintiffs' title. This charter was granted in 1781, at which period, or immediately after, this town was settled, and organized in 1787; and every year since, it has been represented in the legislature, as will appear by the journals of the house. At the time this suit was brought, in 1821, every lot in town was occupied, but not an occupant held under a proprietor. No proprietor had ever asserted a right to any part of this town under this charter. Here, then, is a period of forty-one years, during which time this town has been transformed from a wilderness to cultivated fields and gardens, and not a solitary right has ever been claimed or asserted under this charter. Can stronger evidence of a surrender of this charter be given in a court of justice? Can it be supposed, that if this charter had really conveyed to these proprietors this beautiful and highly valuable tract of land, that not one of the seventy proprietors, either public or private, would in forty-one years have asserted their right? These facts ought to put at rest for ever this state claim. There is something rotten in the business, or this claim would not have slept until all, who could tell any thing about it, had, with their transactions, passed into oblivion.

*Mr. Allen, for the plaintiffs.*—1. The defendant contended, " *that it ought to appear from the declaration, how the plaintiffs* " *claim, whether as tenants in common, or in severalty.*" In answer, the plaintiffs insist, that they may demand the whole in their declaration, and recover according to their right.—*Chip. Rep.* 41, *Chapin* vs. *Scott*; 1 *Burr.* 326, *Burgess* vs. *Purvis*; *Bray.* 69, *Everts* vs. *Dunton.*

2. " *That he has a complete title by the statute of limitations.*"

GRAND-ISLE,
January,
1831.
University of Vt
vs.
Reynolds' ex'r.

The plaintiffs answer, that the lands were reserved or granted for the use of a seminary or college; and that the University was founded in 1791. If the fee of the land remained in the government, no statute would run upon it, as the principle, "*nullum tempus occurrit regi*," would then apply. If the land was granted, the fee lay in abeyance until 1791, when it was appropriated for the use of the University, before which time no right of action had accrued. And in 1801, ten years from that time, the statute was passed exempting public lands from the operation of the statute of limitations.—*Stat. p.* 292; *State papers, p.* 503.

3. "*That, as tenant in common, the plaintiffs cannot sue to be let into possession, without demand.*" If the plaintiffs be regarded as tenants in common, they insist, that whenever there is an actual ouster, their right of action accrues. A demand to be let in, and a refusal, would be evidence of an ouster; but it does not follow, that no other evidence can be received to prove it. That the defendant has actually ousted the plaintiffs, appears from the case, "that he is in possession, claiming in his own right, adverse to all the world." The deeds, also, to the defendant from Gardner and Sowles, are evidence of an actual ouster.—5 *Mass*, 347, 252, *Higby* vs. *Rice*; *Cowp.* 217, *Fishar* vs. *Prosser*; *N. Y. Dig.* 319, *Adams on ejectment*, 55, *n*.

4. "*That the jury ought to presume a title in the defendant's testator, after thirty eight years' possession.*" There is no disagreement as to the circumstances attending the case. The charter is dated in 1781; and before the year 1785, the town was surveyed and allotted; the charter reserves a right for a college; *Reynolds* took possession of no. 98 and 99 in 1785; the statute of 1791 declares the use of these lands; the statutes of 1802 and 1810, do the same. Now, what circumstances will justify the presumption of a charter or grant, is matter of law to be judged of by the Court.—*Phil. Ev. p.* 124, 2 *Conn. R.* 628, *Sumner* vs. *Child.*

The defendant asks the Court to presume that *these lots* were granted to him; which must, of course, be before the year 1781; because, after that time, the town was allotted, and the numbers given to the lots; which is *wholly inconsistent*; for, if he prescribes for a charter from the government, subsequent to 1781, it would be inoperative and void; because, having before that time, granted, or reserved the same, they could make no second valid grant of it. A presumptive grant must be older than that which it is intended to defeat; as in 1 *Bay*, 26, *Allston* vs. *Saunders*; 11 *East*, 280, *Johnson* vs. *Ireland*; *Cowp.* 102, *Mayor of Kings-*

*ton* vs. *Horner.* If he prescribes to hold from the corporation, it must.be in conformity with their right. And, as they have no other right, than to lease their lands and receive rents, a prescrip- tion of a grant from them, *in fee,* is inconsistent with their right, and is, therefore, inoperative and void. " No grant can be presumed, when there could not have been a legal ·commencement of the right."—*2 Conn. Rep.* 614, *Sumner* vs. *Childs* ; 11 *East,* 374, *Daniel* vs. *North.* If the grant was made to the proprietors, then. they held it *in trust* for the corporation ; and no grant can be presumed whereby trustees would be guilty of a breach of trust.—*2 Conn. Rep.* 615. It does not appear, that the plaintiffs ever had any knowledge of the defendant's possession ; and no title could be presumed against them, without showing that they knew the fact.—11 *East,* 374, *Daniel* vs. *North.*

*The opinion of the Court was given by*

WILLIAMS, J.—The plaintiffs instituted this action against the defendant's testator to recover the possession of lots no. 98 and 99 in Alburgh, and claim title to the same by virtue of a charter under the authority of this state, dated February 23, 1781, granting to Ira Allen and his associates, certain lands therein described,and incorporating the same into a township by the name of Alburgh, and granting to those, who did then, or might thereafter, inhabit the said tract, the same privileges and immunities which were enjoyed by those who inhabited the other towns in this state. In the charter five-seventieth parts, or rights, are reserved to the several public uses mentioned therein ; one of which is for the use of a college ; and this right together with one other, " with " the improvements, rents, interests and profits arising therefrom," it was provided, in the charter, should be " under the control, " order, direction and disposal of the general assembly of this " state forever." And the proprietors were authorized and empowered to locate the same equitably, quantity for quality, in such parts of the town as they or their committee should judge would least incommode the general settlement of said township.

· On the 2d of November, in the year 1791, the university of Vermont was founded, and by the statute giving them existence they were empowered to take charge of, lease, rent and improve, &c., all such grants as had already been made by this state for the use of a college. The case finds that the defendant's-testator, *Reynolds,* and those under whom he claimed, have been in possession of the premises demanded since the spring of the year

GRAND-ISLE,
January,
1831.

University of Vt.
vs.
Reynolds' ex'r.
1785, claiming the same in their own right, and adverse to all the world ; that in September, 1794, he took a deed from one Joseph Sowles, granting him lot no. 98, and in December, 1796, another deed from Asa Gardner of lot no. 99.   It was in evidence on the trial that the town was plotted prior to the year 1785, and, not many years after, surveyed by direction of Ira Allen, and the lines run through the town ; that the lots were one hundred acre lots ; that every lot in town was claimed by some person, although there were some lots not improved or cultivated ; and also that no lot in town was held under an original proprietor named in the charter.   A verdict passed for the plaintiffs, for one-seventieth part of the premises described in the declaration, under a rule, agreed to by the parties.   The question is, whether the plaintiffs can recover of the defendant, the premises for which the verdict was taken, on the facts which appear in the statement of the case, or whether the court should have directed or advised to a verdict for the defendant.

It appears that the plaintiffs claim as tenants in common ; and the first inquiry which has been presented is, whether, as such, they can maintain this action against any or all of the persons inhabiting the town of Alburgh.   We all know that a tenant in common may, in ordinary cases, maintain an action of ejectment ; that the tenants are considered as having several titles, and if they are disseized, they are put to their several actions.   Each may maintain an action to recover his proportion ; and, as against a stranger, it has always been considered in this state, that he may recover the whole of the demanded premises ; and it is so considered in Connecticut, as we learn from *Swifts' Digest*, 508.   Indeed the principles of law, as applicable to tenants in common, and the actions they may bring, are familiar to every one.

It has been denied in the argument that proprietors of lands under grants from the state of New-Hampshire and this state, constituting towns, are tenants in common ; and it has been urged as an argument against their being so considered, that they can do many things by vote ; as making a division of their lands into severalty ; voting to settlers the lots on which they live, in lieu of their drafts ; and authorize a division by pitches ; that a proprietor may acquire a title by the statute of limitations ; that their possessions are considered as several, &c., which it is said are inconsistent with the idea of their being tenants in common.   They must, however, be considered as strictly tenants in common, and where they differ from ordinary tenants in common, the difference has

been created either by statute, or by a course of decisions in our courts of law.   In the grants or charters to them certain civil and political privileges are given  to those  who inhabit the particular tract chartered as a township, and those inhabitants are incorpora- ted ; but these privileges are not given by the charter to the pro- prietors, nor have they any other interest in them, except so far as these privileges may enhance the value of the  lands granted. The inhabitants of a town may be a corporation, and enjoy all the privileges which are granted either by the charter, or the several statutes, and yet be a body  totally distinct from, and hold  their possessions adverse to the proprietors.   Grants in this country to several persons have always been so construed as to make them tenants in common,  when the same grants in England would cre- ate an estate in joint  tenancy.   The very terms of the  charter convey to the proprietors an estate which must,  until division,  be held in common, and unless they are considered as taking an  es- tate in common, it is  difficult to define the  nature of the interest which they have.

These  grants of townships were  always  considered in  New- England as creating a tenancy in common.   *Sullivan*, in his his- tory of land titles, speaking of the  grants of townships to sundry grantees, without expressing any particular kind of tenure or spe- cies of estate, says,  " they have always been  considered as  fee simple estates, and tenancies in common ; and the  principles, as to the nature of  the estate,  have been invariably the  same since the country was settled."   The opinion of *Judge Parsons*, in the case of *Higbee et al*. vs. *Rice*, 5 *Mass*, 344, is to the same effect. The right of making a division by vote or by pitching, the right as a corporation to commence or defend actions, and the right to act as a corporation, are privileges given, or regulations made, by stat- ute, but do not alter the nature of their estate.   The right of one proprietor to maintain an action against a stranger and recover the whole of the premises demanded, his acquiring  a title as against his co-proprietors by adverse possession, have not been considered as peculiar to proprietors, but as incident to them as tenants in common.   In short, these proprietors may be considered as strict- ly tenants in common, with all the rights and incidents to  such tenancy, except where the statute or a course of decisions in this state may have altered those rights and incidents.   If the plaintiffs, then, are considered as standing on the same footing with the pro- prietors or grantees, the charter makes them tenants in common with the  other proprietors of  the tract of land therein granted.

uuu

GRAND-ISLE,   What is the appropriate remedy for a proprietor when the others
  January,
  1831.   have actually taken possession and divided to themselves all the
University of Vt. lands included in the limits of the grant, is a question which has
      vs.   not to my knowledge been directly brought to the consideration
Reynolds' ex'r.
of the courts of this state, or received any judicial determination.
But, upon the principles applicable to tenancies in common, it may
well be assumed, that if the proprietors will not consent to a di-
vision in any of the methods which the law recognises for dividing
the lands among them, such proprietor might, after demand, be
let into possession of his share by an action of ejectment; and if
the consequences of this would be injurious to the other proprie-
tors, it would arise from their wrongful act in excluding him from
his proprietory right. The Court see no difficulty in allowing
this action to be maintained by one proprietor, when he is altogeth-
er shut out from the possession by his co-proprietors, and extend-
ing to him the same remedy which the law provides for a tenant
in common under similar circumstances. There is more difficul-
ty, however, in the application of these principles and extending
this remedy to those who are directed, as agents or trustees, to
take charge of the rights of land which are usually denominated
public rights; not because we think there is any foundation for
the argument, that the state or a corporation cannot hold lands in
common, as the law is the very reverse of this. The King or a corpo-
ration, may be a tenant in common, but cannot be a joint tenant.—
*Co. Litt.* 190, *a*; 2 *Saund.* 319,*Bennet* vs. *Holbeck.* But the diffi-
culty arises from the nature of their interest, which, it appears to
me, cannot be enjoyed by the agents or trustees in common with the
other proprietors. As to these rights of land, and particularly that
one which the plaintiffs claim, it is only the *use* which is appro-
priated, and not the freehold. By an act of the legislature pass-
ed in October, 1787, ( *Old stat. Haswell's edit. p.* 209,) it was
provided, that a person should be annually appointed by the gen-
eral assembly, " to take the charge and inspection of all lands
appropriated by charter for the erecting a college or university in
this state, and to allot and lease out the said lands for the benefit
of the institution ;" and provisions, somewhat similar, were made
by the same act in relation to the glebe and society lands.

By the act of 1791, founding the University, the board of trus-
tees were empowered to take charge of, lease, rent and improve,
&c. the lands granted for the use and benefit of a college. It will
be but of little avail to them to be let into possession of one seven-
tieth of every lot or tenement in a town ; and it would be impossi-

GRAND-ISLE,
January,
1831.

University of Vt
vs
Reynolds' ex'r.

ble to lease them to any advantage or profit to the institution; the expense and disadvantage attending it would wholly destroy the benefit intended by the grant.

One of the consequences of considering these public rights as being held in common with the other lands, ought not to be lost sight of. If the principle is correct which has been adopted in this state, before mentioned, that a tenant in common may in an action of ejectment against a stranger to the title, recover the whole of the estate held in common for the benefit of his co-tenants, and if the public lands are exempt from the operation of the statute of limitations, it will follow as a necessary consequence, that no length of time will protect a person in possession, but he will be liable at any time to be dispossessed by those who are trustees of the public rights of lands where there has been no location, not only of the *shares*, which belong to those rights, but also of the whole. The verdict in this case might as well have been for the whole, if the plaintiffs had so elected, as for the undivided share. This certainly must be the effect, unless we consider a person in possession for a sufficient length of time to bar the right of individuals, as acquiring a title by disseizin, to all the tract of land of which he is in the possession, except the undivided shares which were reserved for public uses; and thus acquire an estate in common by disseizin or by adverse possession. If an estate in common can thus be acquired, then, it is true, the disseizor would not be a stranger to the title. From the fact that provision was made at an early day for allotting the public rights; from the great difficulty, if not impossibility, of those rights being improved and occupied in such a manner as to secure the use for the benefit of those for whom they were designed, while they remain undivided, and from the consequences which will inevitably result from permitting either the whole, or an undivided share, to be recovered in an action of ejectment against the occupier of every lot of land or tenement in town, whatever may be its size, there appears to me to be great weight in the argument, that these rights cannot be occupied and enjoyed, and that no action of ejectment can be maintained to recover them until a division or allotment is made; that measures should be first taken to procure a division, or compel the proprietors to set out and locate these rights in such a manner as to secure to them an equal proportion with the other proprietors: and I think the legal or equitable powers of this Court are sufficient to compel such a division, so that the lands could be appropriated to the use designed by the charter, if the proprietors should obstinately refuse to make a division, or

GRAND-ISLE,
January,
1831.
—————
University of Vt
vs.
Reynolds' ex'r. locate and set out the public rights. A majority of the Court, however, are of opinion that these lands are held in common with all the lands in town *previous* to location or allotment, and that an action of ejectment may be maintained to recover the public lands, *when there is no actual location;* and consequently, that the plaintiffs may maintain an action of ejectment against the defendant, if they can establish a title to the right granted for a college or university.

The next question which arises is, whether the plaintiffs are barred by the statute of limitations, the defendant's testator having been in possession of the premises, claiming title thereto, and claiming to hold the same adverse to all the world, from the spring of the year 1785, until the commencement of this suit. On this question we are all agreed, that the plaintiffs are not barred by any of the statutes of limitation which have been in existence in this state since the defendant's testator went into possession. The act passed in October, 1785, called the quieting act, contains an express provision, that it shall not extend to any person or persons settled on lands granted or sequestered for public, pious or charitable uses; and although this proviso is inserted in the act prior to the sections containing the limitation of real actions, yet the terms of the proviso and the nature of it embrace the whole act. The terms are, " this act shall not extend," &c., and was unquestionably designed to prevent the operation of the statute of limitations upon the public lands, as well as upon those lands of which possession had been taken in pursuance of a contract with the owner. If this proviso is to be confined to the prior sections of the act alone, every person who was on the land of another by contract, and who had not complied with the terms of the contract, and was, in consequence, liable to be ejected before the first day of July, 1785, would have acquired a title by such possession after three years from that time.

The act of March 10, 1787, which barred the action of ejectment, or any possessory or real action, after fifteen years, was, by an act passed October 26, in the same year, suspended until the first day of December next thereafter; and by another act passed the 28th day of October, 1790, the first day of December, 1787, was declared to be the day from which the time of limitation was to begin. (*Old statute, Haswell's edit. p.* 212, 261.) Under this act no action of ejectment was barred, or right of entry taken away, by an adverse possession, until the first day of December, 1802. The statute of limitations of 1797 was to take effect on the first day of September, 1798; and under that statute no real or posses-

GRAND-ISLE,
January,
1831.

University of Vt
vs.
Reynolds' ex'r,

sory action was barred until the first day of September, 1813. And in October, 1801, and in November, 1802, before any right could be barred by these statutes, laws were passed declaring that nothing in any of them should be construed to extend to any lands granted or sequestered or appropriated to public, pious and charitable uses. The answer that has been given to these statutes of 1801 and 1802, that the statute of limitations having once begun to run, must continue to run, is by no means satisfactory. A person in possession of land without right is a trespasser, and is not considered as having any right or title commencing in consequence of this trespass. The legislature may vary the remedy given for the recovery of real or personal estate, and may prescribe a longer or shorter time, within which all actions shall be brought. No rights are acquired or lost by the statute of limitations, until the expiration of the period limited by them; and until the expiration of that period the time may be enlarged.. The statutes of 1801 and 1802 prevented the operation of the statutes of 1787 and 1797, on the claim of the plaintiffs. A similar construction to the statute of 1785 was given by Judge *Patterson*, in a cause before him in the circuit court of this state; and it is understood that all these statutes of limitations have been examined by the supreme court of the United States in a case determined last winter, in which it was decided, that neither of them had any operation on public lands.

Having this view of the statute of limitations and its operation as to the public rights, it is unnecessary to examine the questions which have been presented in the argument, whether the fee of the college right, as it is called, was in abeyance until the college was founded, or to enquire, in whom the fee was, or is, vested.

It was urged in the argument, that if any of the proprietors could bring an action against the defendant's testator during the time he was in possession, that the statute would run in his favor. It is undoubtedly true, that when a joint action is given to several, the statute will run against all, notwithstanding some of them are under the disabilities mentioned in the statute, as being infants, *feme coverts*, &c., (4 *Term Rep.* 516, *Perry et al.* vs. *Jackson et al.*; 7 *Cranch*, 156, *Marsteller et al.* vs. *McLean*,) and possibly, if it was necessary, that this action should have been brought by all the proprietors by name, or by the proprietors in their corporate capacity, agreeably to the statute, this principle might operate in favor of the defendant. But, inasmuch as we are of opinion, that the plaintiffs may maintain this action for their

GRAND-ISLE,
January,
1831.

University of Vt

vs.
Reynolds' ex'r.

undivided share, and as they are expressly exempted from the operation of the statute of limitations, the principles adverted to will not preclude their recovery in this case.

The last question which was argued, and which is the one of the greatest importance, arises from the doctrine of presumption, —whether the jury would not have presumed a title in *Reynolds* after so long an adverse and peaceable possession. A possession of lands, for the period of fifteen years, where the statute of limitations will operate, is an *absolute bar* to any claim from the rightful owner, and has been considered as giving a possessory title. This was ruled by *Lord Holt*, in the case of *Stokes vs. Berry*, 2 *Salk.* 421, and 1 *Lord Raym.* 741, where a possession of twenty years was considered as giving such a title as would enable the possessor to maintain ejectment. In cases to which the statute does not apply, a long continued possession affords presumptive evidence of title. The maxim of the law is, *ex diuturnitate temporis omnia presumuntur solemniter esse acta.—Co. Litt.* 6. An act of parliament, a grant from the crown, a deed, and, in fact, any thing which will quiet a possession, may be presumed from length of time, where such act, grant, or deed would have been lawfully passed, made, or given ; and this presumption is said to be founded, 1st. on the principle, that the law will not presume any man's acts to be illegal, but will attribute such possession to a legal origin ; 2d. that the failure to interrupt such possession by those who had the right, arose from their knowledge that it was lawful in its inception ; and 3d. upon principles of public policy for quieting men in their possessions. In the case of the *Mayor of Kingston upon Hull* vs. *Horner, Cowper*, 102, it was left to the jury to presume a grant or charter from the crown of certain duties ; and *Lord Mansfield* mentions a case where a possession of one hundred years was left to the jury as evidence of right in the defendant. A great variety of cases were read at the argument, and the elementary treatises are full of them, to show that a grant, or the extinguishment or surrender of a grant, and, in short, every thing which will confirm a long continued possession may be presumed ; and this, not because it is necessary to believe that any such acts were actually done, or executed, but for the purpose of quieting possession. In cases of prescription this possession is conclusive as to the right. Certain facts being found to exist, the right is confirmed as a matter of law, and the possession is considered as conclusive of the right, as if a deed or charter was actually produced.

GRAND-ISLE,
January,
1831.

University of Vt
vs.
Reynolds' ex'r.

There are certain other cases in which the presumption is not considered as altogether a legal inference, but must be made by the jury, and yet the court advise or direct the jury to make such presumption. The enjoyment of certain incorporeal hereditaments for the period of twenty years, if adverse, establishes the right to such enjoyment founded on the presumption of a grant ; but this possession is liable to be explained. The enjoyment is, therefore, not an absolute title, but may be rebutted. But, if the enjoyment was adverse, it affords sufficient ground for such presumption. *Chancellor Kent* says, the later English authorities give to this presumption the most unshaken stability, and they say it is conclusive evidence of right. *Judge Story,*in the case of *Tyler* vs. *Wilkinson,* considers it in this light,and says that this presumption may go to the extinguishment of a right in various ways, as well as by grant. In these cases, although the courts do not decide upon these presumptions as purely questions of law, yet they direct the jury to make them to answer some purposes of justice, and to quiet possessions. These cases differ altogether from those where the jury are to make their inferences and deductions from the weight of testimony, as to the existence and loss of a deed or grant. This second class of presumptions, where the jury are advised to make them, it will be found, apply to corporeal as well as incorporeal hereditaments. Thus, a grant of land may be presumed, as well as a grant of a fishery, or common, or way, and many cases of this kind are to be found.—10 *Johns.* 377, *Jackson* vs. *M'Call; 7 Johns.*5, *Jackson* vs. *Murray* ; 3 *Johns.*375, *Jackson* vs. *Hudson.* In the latter case an outstanding title, founded on a deed or release, which was in evidence, was presumed to have been extinguished, as the title had never been asserted or claimed. From comparing these cases with the case of *Doe ex dem..Fenwick* vs. *Reed,* 5 *Barn. and Ald.* 232, it may be inferred, that where there has been a long continued possession which in its origin was or would have been unlawful, unless there had been a grant ; or if the origin of such possession cannot be accounted for, without considering it either as unlawful, or also lawful by virtue of a grant, the Court will not infer that the possession was unlawful, but direct the jury to presume such grant, or any thing which will confirm the possession. But if the original possession was consistent with the fact of there having been no grant, then although the possession may have been ever so long, it will be left to a jury to say whether they believe such grant has been made, and they must determine according to the weight of

GRAND-ISLE,
January,
1831.
——————
University of Vt
vs.
Reynolds' ex'r.

the evidence. Further, it is true that where there exists no power to make a grant, none can be presumed from a possession however long it may be. If it was necessary in this case to presume a deed from the trustees of the university to establish the defendant's claim, it would not be established, as the trustees never had any power to convey by deed. If it were required to presume a grant from the state subsequent to the grant to Allen and his associates, none could be presumed, unless it was also presumed that the first had been surrendered. But it is not necessary to make either of these to quiet the defendant in his possession. The facts are that the defendant's testator went into possession of the premises adverse to all the world in the spring of the year, 1785. From the fall of the year, 1787, to the time of commencing this action, if an agent was appointed agreeably to the direction of the act before mentioned, there have been persons, either the agents or trustees, whose duty it has been to take care of the rights granted for the use of a college, and to eject the defendant's testator, if he was in without right. No one of the proprietors named in the charter of Alburg have ever *successfully* asserted their claim under the charter, if they have attempted it, as it appears by the case, that no lot in town is now holden under the original proprietor. The only attempt which has been made, is the survey of the town into lots by Ira Allen ; but whether he then abandoned his claim under a conviction that it was useless to set it up against the persons inhabiting the town, because he found they had a better title, we do not learn.

Under these circumstances it appears to us that the long continued possession of these lots by *Mr. Reynolds* should be considered as affording evidence that his possession commenced under a lawful title ; and the jury should have been advised *either to* presume an antecedent grant, or a surrender of the charter, under which the plaintiffs claim, or an extinguishment of any title which ever could have been derived under it, in favor of those who are in possession. If in this action, or in an action against any of the inhabitants of this town, none of whom hold under this charter, a grant subsequent to the grant to Allen should be produced, and from the evidence it should appear, that the town was settled under such subsequent grant, and that no claim had been asserted under the first, according to the principles laid down by *Judge Chipman, Paine & Morris* vs. *Smead,* 1 *Chip.* 56, such settlement under the subsequent grant and abandonment of the former would be considered as a waiver of the first and confirmation of

GRAND-ISLE,
January;
1831.

the second grant.  And where there has been such a settlement
and a possession for a long time, although no other grant or char-
ter is produced under which such settlement and possession com-
menced, it may, and it ought to, be presumed, that the charter
under which no claim had been asserted, had been abandoned or
surrendered, and either an antecedent or subsequent grant made
to the inhabitants who are in the actual occupancy of their lands.

University of Vt
vs.
Reynolds' ex'rs

From this view of the case we think it is evident that the plain-
tiffs are not entitled to recover in this action ; that the jury might
and ought to have presumed in favor of the person who was in
possession, either a grant of this particular right of land, which
the legislature had the power to make until the year, 1791, when
the college was founded, or an antecedent grant to the inhabitants
of this town, or an abandonment and extinguishment by lawful
means of the title given by the charter, or a surrender of the same,
and a subsequent grant to the persons in possession, either of
which would have attributed to the long and undisturbed posses-
sion of *Mr. Reynolds* a legal origin ; and that public policy re-
quires that this possession should be quieted.

Judgement on the case must, therefore,
be rendered for the defendant.

*Allen*, for the plaintiffs.
*Smalley & Judge Royce*, for the defendant.