# REPORTS.

## WINDSOR COUNTY,

### FEBRUARY TERM, 1836.

PRESENT, HON. STEPHEN ROYCE,
      " SAMUEL S. PHELPS,
      " JACOB COLLAMER,   } *Assistant Justices.*
      " ISAAC F. REDFIELD,

## DAVID H. SUMNER *v.* SAMUEL CONANT.

A township is granted in sixty-nine equal shares, among which is a grant to His Excellency, Benning Wentworth, Esq., of a tract, as marked, ' B. W.' in the plan, to contain five hundred acres, which is to be accounted two of the within shares; the shares of Gov. W. not being marked in the plan, as designated in the charter.

Held—That the grant was not void for uncertainty—and that Gov. W. took, by the grant, two shares, as tenant in common with the other grantees.

If more than 500 acres are set to the Governor's right, in the division of the town, a stranger to all proprietary title cannot object to such division.

A feme covert cannot, either separately, or jointly with her husband, execute a valid power of attorney, to convey lands, held in her right.

EJECTMENT, to recover a lot of land in Barnard, numbered 165. The plaintiff claimed to derive title from Benning Wentworth, as one of the original grantees of said town of Barnard.

On the trial of the cause, the plaintiff gave in evidence a copy of the charter of the town of Barnard, which grants the town in sixty-nine equal shares to the persons therein named. After naming other grantees, the shares of Gov. Wentworth are mentioned as follows: "His Excellency Benning Wentworth, Esq., a tract as marked in the plan, ' B.

W.' to contain five hundred acres, which is to be accounted two of the within shares." The shares of Gov. Wentworth were not designated on the plan by the letters 'B. W.' being marked thereon.

The plaintiff also offered in evidence a copy of the will of Benning Wentworth, who devised the whole of his estate, both real and personal, to Martha Wentworth, his wife.

A copy of the will of the said Martha Wentworth, who devised all her real, personal and mixed estate to her daughter, Martha Wentworth, wife of John Wentworth, in tail-general, with power to sell and dispose of such part of the personal or real estate, as might be best spared, for her and her family's comfortable support, and to do good to the poor and needy.

A power of attorney from John Wentworth and Martha, his wife, to Isaac Shepherd, authorizing the said Shepherd, in the name of the said John and Martha " to prosecute, sue for, and recover all and every the right and rights commonly called the Governor's right, or farm, situate and being in the state of Vermont, in every township in said State, containing five hundred acres, more or less, and reserved to His Excellency, the late Governor Benning Wentworth" and also empowering the said Shepherd " to convey all and every such right or rights in said state of Vermont, in our name, and to give deeds of quit claim to purchasers of the same."

The plaintiff also offered a deed from the said John Wentworth and Martha, his wife, executed by said Shepherd as their attorney, to Henry A. Randall, conveying (among other lands) Gov. Wentworth's two rights in Barnard. Also, a power of attorney from said Randall to said Shepherd empowering the said Shepherd, as the attorney of said Randall, to sell and convey, in the name of said Randall, by quitclaim deed, any or all of the said Randall's lands, and a deed from said Randall, executed by said Shepherd, as his attorney, to the plaintiff, conveying (among other rights) Gov. Wentworth's two rights in Barnard.

Also, a copy from the proprietors' records of said town, which show, that a meeting was called " to see if the proprietors will rectify any mistakes, if there should be any found, in the proprietors' records ;" " to see if the proprietors will finish laying out and dividing the remainder of the undivi-

ded lands in said Barnard," and for other purposes, as specified in the warning; that the proprietors met on the 6th of October, 1795, and chose "a committee of three to look into the proprietors' records and state the mistakes and make report at the next meeting;" that the meeting adjourned to the 14th of October, 1795; that the proprietors met pursuant to the adjournment, and the Committee, appointed at the previous meeting, reported, that on examination of the records, they found that, at a former meeting of the proprietors, a division of lands in said Barnard had been made, and the lots, on which the settlers lived, were voted to them in lieu of the lots by them drafted, and the remainder of said division was made by draft; that the clerk, through mistake, entered on the records all the *voted* and *drafted* lands, as *voted*, making no distinction, and that they had "entered the voted and the drafted lands as follows:—Governor's two shares, drafted, 166, 169, 265, 165, 168, 264," which report the meeting voted to accept.

The several deeds and letters of attorney, above set forth, were duly executed and acknowledged, and the magistrate, who took the acknowledgment of Martha Wentworth, certified that she was examined separate and apart from her husband.

The defendant objected to the introduction of all the foregoing evidence, except the copy of the charter, and the several wills of Benning Wentworth and Martha Wentworth, but the Court overruled the objections and admitted the evidence.

The plaintiff also gave evidence, tending to prove the marriage of Michael Wentworth to the said Martha Wentworth first named, on the 19th December, 1770; and also, of the said John Wentworth to the said Martha Wentworth, secondly above named, on the 7th January, 1802, and that the said Benning Wentworth died, prior to the 31st day of Oct. 1770, and that the said John Wentworth died on the 3d day of June, 1831; and it was conceded that the defendant was in possession of the land in controversy.

On the trial, the counsel for the defendant contended and requested the Court to charge the Jury;—

1. That by the terms of the charter, if Benning Wentworth acquired any rights under such charter, he acquired a

right, in severalty, to 500 acres of land in one separate and distinct tract, and not a right to five or six different tracts located in different parts of the town, and that it was incumbent on the plaintiff to shew the land, sued for, to be a part of said tract;—

2. That, inasmuch as the tract, attempted to be granted, by said charter, to said Benning Wentworth, was not therein described with such certainty that it could be known and distinguished from the lands granted by said charter to the other grantees therein named, said grant was void as to said Wentworth;—

3. That the said Benning Wentworth, never had any legal interest in the land in question, by virtue of said charter;—

4. That neither the plaintiff, nor any of the persons from or through whom his pretended title passed, ever had any legal right or interest to the land in question, by virtue of any division of the lands in Barnard, shewn by the evidence in the case, to have been made by the proprietors of said town.

But the Court refused so to charge the jury, but did charge them to the contrary thereof. Whereupon the jury returned a verdict for the plaintiff, and the Court rendered judgment thereon;—to which decision and charge the defendant excepted.

*Aikens & Edgerton*, for the defendant.

The plaintiff is not entitled to recover.

1. Because Benning Wentworth, under whose will he claims, was never seized of the demanded premises.

The King grants the township of Barnard (in 69 equal shares) to William Storey, and so on to Samuel Wentworth, to each, one undivided share; and an undivided share to each of certain public and pious uses, and to Benning Wentworth (instead of two shares in common with the other grantees) *a tract of* 500 *acres*, as marked on the plan; which was to be accounted and be in lieu of two of the 69 common shares. Benning Wentworth was to have no connexion with the other Plebeian grantees. Whatever he took, he must have taken in severalty. *Strong* v. *Payne*, 1 D. Chip. R. 201. *Dow* v. *Strong*, 1 Tyler's Rep. 191.

The grant conveys to him the same rights as if the rest of the township had not been granted.

Suppose, then, that while the whole township remained in the King, ungranted, the grant had been to Benning Wentworth alone, of a tract of land in the town, of 500 acres, referring for a location and description of the tract, to lines drawn in the plan of the town, annexed to the grant, and inclosing the letters 'B. W.' and that no such lines or letters were marked on the plan. Such grant would be void for defective description. 1 Swift's Dig. 122. 4 Mass. Rep. 205. 4 Peters' Condensed Rep. 682.

He therefore took no lands in Barnard by virtue of the Royal grant.

Neither did he, nor those claiming under him, acquire any rights under any division shewn by the evidence to have been made by the proprietors.

The act of the Legislature, "regulating proprietors' meetings," authorizes a division, by vote, of the proprietors of such lands only, "as lie in common." Vt. Stat. p. 670-1.

If, therefore, Benning Wentworth owned in severalty 500 *acres in one tract*, by virtue of the charter, it was not competent for the proprietors to allot and convey to him, by draft, 600 *acres in six different tracts*, nor was it competent for them, if he took nothing under the charter, to convey to him lands, which they themselves owned, by no other act or solemnity than a mere vote.

There is no evidence of any assent or acquiescence, for fifteen years, of Benning Wentworth and those claiming under him, to any division. The contrary appears from the language, used in the several conveyances in the description of the Governor's rights in the several towns. The lands in each town are referred to, and described, as being *lots* or *farms*, consisting of 500 acres each. There is, therefore, no evidence in the case of a division *in fact*.

If Benning Wentworth was ever seized at all, it was by virtue of a gift or purchase from the common proprietors, in whom, till severed by the division, the title exclusively was.

This was not done till Oct. 14, 1795 ; but the will, under which the demandant claims title, was executed the 17th of Sept. 1769, and was proved the 10th of Oct. 1770 ; and the testator died in the latter year.

It is a well settled principle of law, that a devise does not carry with it any estate, of which the devisor was not seized,

or well entitled, at the time of making the will, and continued seized till the time of his death. 6 Cruise, 38, 9 § 27, 28, 29, and 31, and the numerous cases therein cited.

Benning Wentworth did not, therefore, convey any title in the demanded premises, by his will to Martha, the devisee.

2. But if the Court should be of opinion, that B. W. was seized of the demanded premises, at the time of making his will, so that the title, by that instrument, vested in Martha, the elder, then we say it remains in Martha, the younger, and has never passed to the present plaintiff.

This position, we believe, is sustained by objections, taken to the power of attorney from John and Martha Wentworth to Isaac Shepherd, and to the deed attempted to be executed by Shepherd to Randall, in virtue of that power.

At Common Law, the deed of a feme covert is absolutely void, and her ability to convey the estate, by deed, is created by the statute law; and, to make her deed effectual, the forms and solemnities by the statute prescribed, must be pursued. *Elliot et al.* v. *Piersol et al.* 1 Peters' Rep. 338. The *lex loci*, where the land lies, should be complied with. 6 Condensed Rep. 278, note.

The deed, from John and Martha Wentworth to Randall, does not conform to the requisitions of the statute, and is, therefore, void. (Ib. 338, 1 Peters' Rep.)

1. It is executed by attorney, and a feme covert cannot convey by attorney. Statute 171, § 12. Paley's Agency, 155, § 4. 5 Cruise. 87, § 5, 7, 8.

Who has the power of revocation in such case?

2. No certificate of the wife's acknowledgment is *indorsed on the deed.* Stat. § 12. 5 Cr. Dig. 87. 1 Peters' Rep. 340.

3. No estate of the wife passed by said deed, because the acknowledgment of " such *deed,*" was not taken by a justice of the Peace *of the county,* in which *Martha Wentworth* lived, nor in which the land lies.

Do these statute requisites apply to the deed, executed by the agent?

4. The 13th section does not aid the matter, for the deed would have been void, if the acknowledgment had been taken "before some proper officer within this state," similarly situated, in respect to the woman, and land, or had been, by such officer, certified in the same manner.

5. The deed is not acknowledged to be the deed of the grantors, but to be "*his*," (Shepherd's) deed.

The acknowledgment of a deed, by a feme covert, is a part of the execution thereof, and is as necessary to give it validity between the parties, as the *signing*, and is governed by the same principles. Statute, ut sup. Combes' case, 9 Rep. 77. *Frontin* v. *Small*, 2 L. Ray. 14, 18. *Wilks et al.* v. *Back*, 2 East, 142. *Fowler* v. *Shearer*, 7 Mass. R. 19. Paley's agency, 152, and on. *Elliot et al.* v. *Piersol et al.* 1 Peters' R. 338.

The power of attorney is *not the deed*, for it does not convey the land, it is subject to revocation, and an acknowledgment of the power is not the acknowledgment of the deed. The deed itself must be duly acknowledged. 4 Cruise, Tit. 32. Ch. 16, § 18, page, 167.

The objections to the deed to Randall apply with equal force to the deed from Randall to Sumner. It is also obnoxious to a further objection;—it is *not sealed* by the grantor, through his attorney; but the attorney has affixed *his own seal*, which was unnecessary. The language of the record, as well as the *locus sigilli* declares it to be the seal of Shepherd; the record also declares it to be the act and deed of Shepherd. It is added, it is true, that these acts of *his* are done, *as and for* the act and deed of H. A. Randall, but this is not what the law authorizes him to do. He could make *his own* deed, and he could make Randall's deed, if he chose, but he could not substitute the one for the other, the term "*as*," is expressive of similitude between the things; and the word "*for*," in the sense, in which it is here used, imports a *substitution* of the *one* thing for the other, which it is like; but what is like, and *in the place of another*, is not itself that other, and the land of Randall could be conveyed, only by the deed of Randall.

*T. Hutchinson*, for plaintiff.

1. So far as relates to the title of Benning Wentworth to the lot in question, but little need be said on the part of the plaintiff. The charter gives him two full shares, and proposes to mark it on the plan, that he may hold it in severalty, but it is not so marked on the plan. The defendant, without any pretence of title to any land in the town, contends,

that, by a failure to locate, by marking on the plan, B. Wentworth lost his two shares. This argument is wholly preposterous. The right of Wentworth, to have his land somewhere in the town, is as good as that of any other proprietor ; and he has as good a right to share in the general division of the land in town, as any other proprietor. Such a division was made by and among the proprietors, as they are all satisfied with, and have all acquiesced in, for 30 or 40 years, and that division allots the land in question, to Benning Wentworth ; and the defendant, a stranger to all title, has no right to dispute that division. He would have no such right, even if Wentworth's land had been located on the back of the charter, and the proprietors had made the present division, regardless of that location, and they and Wentworth had acquiesced in it to this time.

2. Martha had a right, under the will, to convey the lands for her life, (and she is yet alive,) and to convey in fee, for her support or for pupuses of charity. The will submits the whole to her judgment when she wants support, and what objects of charity she wishes to favor. As to her right to convey a fee, see 3 Salk. Rep. 276. *Bainton et al* v. *Ward*, 2 Eq. Dig. 843.

3. Martha had a right to convey by a power of attorney, her husband joining her in it. No statute is requisite to authorize this. There is no statute of this state, nor the state of New York, nor probably of any other state, expressly authorizing the conveyance of lands, through the medium of a power of attorney. Our statute, on page 170, implies the existence of such a right, by a provision for the recording such power, and making a copy of the record, evidence, as a copy of the deed would be.

The object of the twelfth section of the statute is not to describe by what deed a feme covert may convey land ; but, supposing she will undertake to convey by a proper deed, it provides how the same shall be acknowledged by her, so as to guard against any improper influence of her husband. Whatever deed or deeds would form a regular conveyance, by any other person, should have the same effect, by a feme covert, joining with her husband, but the acknowledgment, by her, must conform to the 12th section of the statute.

A power of attorney to execute a deed, and the deed,

executed according to that power, form one instrument in law. See 7 Johns. Rep. 45, 48. *Doolittle* v. *Lewis et al.* That she, with her husband, may make such power and deed, see 3 Johns. Rep. 129, 194.

WINDSOR,
*February,*
1836.

Sumner
*v.*
Conant.

The case cited by the defendant's counsel from 7 Mass. Rep. 14. *Fowler* v. *Shearer*, contains no intimation that a feme covert cannot convey lands through the medium of a power of attorney. The implication is otherwise. In that case, a feme covert attempted to convey her own land by virtue of a power of attorney from her husband, yet the deed was so framed as to be her own deed only, and not that of her husband; such was also her signing and sealing.

The saying of Ch. J. Parsons in the case of *Fowler* v. *Shearer*, that the attorney must acknowledge it to be the free act and deed of the principal, is but the saying of the Judge, and it had nothing to do with the case under his consideration, for no question is there raised about the acknowledgment, nor does it appear how that deed was acknowledged. The execution of the power of attorney, by John and Martha, was their act, and they acknowledged it to be their free act and deed, and that authorized the attorney named therein to act for them, and they are bound by his act.

In reference to the binding force of this deed, it is the deed of John and Martha; but, in reference to the act of executing it, it is the deed of the attorney, and the thing is well expressed by the terms used in the certificate, that he, as attorney, acknowledged it to be his free act and deed, or by another expression, which means the same thing, that what he had thus done as their attorney, he had done freely.

The opinion of the Court was delivered by

ROYCE, J.—The charter grants the township of Barnard, to be divided into sixty-nine equal shares. And to the list of sixty-three individual grantees, named on the back of the charter, are added certain grants or reservations for public and pious uses, amounting to four shares, and to "his Excellency, Benning Wentworth, Esq. a tract, as marked in the plan 'B. W.,' to contain five hundred acres, which is to be accounted two of the within shares." This is the language in which the governor's rights, under the provincial grants of New

Hampshire, are generally described. And it is certain that in every such case, which has come to the notice of this court, the governor's right has been regarded as a grant in severalty, subject to no division with the other proprietors. But, in one respect, the present case is different from all those alluded to, since the letters ' B. W.' were not placed in the plan, though a plan accompanied the charter. It is insisted that this omission has rendered the grant to Benning Wentworth inoperative and void. We think, however, that the grant was not thereby defeated, though, for want of the usual designation on the plan, it did not vest in severalty. Every grant should be allowed to take effect, if by any reasonable construction it may; and if not in the precise manner indicated, then in that nearest to it, or least inconvenient to the parties interested. Here the governor's right was to be accounted two of the sixty-nine shares, and to hold that he acquired no interest under the charter, involves the conclusion, either that a portion of the lands within the charter limits remained in the crown ungranted, or that the shares became reduced from sixty-nine to sixty-seven;—conclusions manifestly inconsistent with the language and intention of that instrument. It is not an unreasonable supposition that the plan, being no essential part of the grant itself, was made subsequently to the execution of the charter, and is therein referred to as a document, which was to locate the governor's right. And if so, it is not to be admitted that a failure to supply this additional matter of description, or a neglect to do the act, which was expected to sever this portion from the other lands, should operate to annul the previous grant. To this point the case of the *University of Vermont* v. *Reynolds*, 3 Vt. Rep. 542, may be usefully cited. The charter of Alburgh granted, or reserved, a share for the University, to be so located and set apart, as least to incommode the general settlement of the town. The want of any such location or severance was urged as a prominent ground of defence. But this court held, that if for want of a separate location the right could not be enjoyed in severalty, it should enure as a grant in common with the individual proprietors. For the sake of giving effect to the grant, the court did not hesitate to encounter difficulties, far surpassing any to be imagi-

ned from a temporary tenancy in common, between his excellency and those, whom the counsel denominates his plebeian associates. We are satisfied that, under the circumstances, the right in question was properly carried into the general division of the town.

It is objected that lands to the amount of six hundred acres, instead of five, were severed by the proprietors to this right. As this does not appear to be above the shares of two ordinary rights in that town, the objection is answered by the view already taken of the case. The grant took effect simply as two shares, and not as a located tract of five hundred acres. And whether the proprietors were bound to treat these as equal to two common shares, would depend on considerations, with which the defendant, an apparent stranger to all proprietary title, has no legitimate concern.

The case shows that all the right of Benning Wentworth came by devise to Martha, the wife of John Wentworth, about 1803; and the only remaining question is, whether the plaintiff has acquired her title. This depends on the validity of the power of attorney, executed by her and her husband to Shepherd, in October, A. D. 1808. The power was undoubtedly good for all the purposes mentioned in it, except that of conveying lands; because the husband alone was competent to authorise all necessary acts to accomplish those purposes. And whether it was also good for the purpose of passing her title to the lands is a question of great importance, and one which has never been decided in this court to our knowledge.

At common law, a woman under coverture could make no conveyance of her lands, except through the agency of a court of record. She could neither convey directly by deed, nor authorise any one to convey for her. All her present right to convey by deed is therefore conferred by statute. The requisites of a common deed of conveyance are prescribed by the fifth section of the act regulating conveyances. It must be " signed and sealed by the party having good and lawful authority thereunto," and " signed by two or more witnesses &c." The ninth section contemplates that such deed may be executed by attorney, and discloses some of the requisites of the power of attorney. The words are, " such power having

been signed, sealed, and acknowleged before a justice of the peace, by the party having lawful right to make the same. " Thus far the statute is applicable to all persons having a legal right to act under it, whether by conveying their lands directly, or empowering agents to convey. No personal disabilities are as yet mentioned, or provided for. But the 12th section relates exclusively to the case of a feme covert attempting to convey her lands by deed. The right is there given or recognised, to convey " by deed of herself and baron"; and as a protection against any improper influence of the husband, her separate examination and acknowledgment are made necessary, and required to be certified upon the deed. The question now presents itself, whether this deed may not be executed through the instrumentality of a third person? Though it is generally true, that what a person has a right to do in his own affairs, he may authorise another to do for him; yet, this is by no means universally true. An infant may execute and deliver a deed of his land, which will be effectual in law, unless he afterwards elects to avoid it; whilst his authority to another, to deed for him, is merely void. Reeve's D.R. 251. The disability of a feme covert is not founded, like that of an infant, upon a supposed want of discretion, but results from a legal subjection to her husband, which is presumed to deprive her of that freedom of will, which is essential to the validity of contracts. And that this disability emphatically applies to the delegation of powers is shown by the familiar case of an attorney to defend a suit, whom, it is every where said, the wife cannot appoint. It is contended, however, that in this instance, the statute has removed her disability. This proposition is defended on two grounds:—1st. That the power to convey, and the deed executed by the agent, being parts of one entire conveyance, constitute the deed, which the statute has authorised:—2d. That the right to convey, being expressly given, the power to create an intermediate agency should be upheld, as one of the necessary, or usual, means for exercising that right. The first ground here taken, would lead to a very free and loose construction of the statute. The power of attorney is strictly no part of the conveyance, but a mere qualification of the person, who is to make it. Much less is it the deed of conveyance itself, of which alone the

statute speaks. It is known that the power and deed are distinct instruments, not merely executed at different times, but acknowledged by different persons; the power by the party making it, and the deed by the agent who executes it. Such were the facts in this case. And how can it be maintained, except upon a subtle and strained construction of the act, that Martha Wentworth has ever executed and acknowledged the deed, which professes to convey her estate? In our opinion, the terms of the statute do not justify a conclusion so wide of their apparent import.

The remaining ground is open to most of the observations already made. I shall suggest but a simple additional objection, which consists in the inability of the wife to revoke a power of this description, without the concurrence of her husband. Whether this consideration alone would be fatal to the power in every case, it is certainly of great and decisive force in the present. The power in question extended to all the rights granted, or reserved, to Gov. Wentworth throughout this state; the property to be affected was consequently large; and the business of the agency was doubtless expected to continue through a course of years. To sustain the power, under such circumstances, would be to place the valuable estate of a wife beyond her own control, and not unfrequently subject it to the waste of a faithless agent, or an unwise and improvident husband.

Judgment of County Court reversed, and new trial granted.