# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

TRUSTEES OF CALEDONIA COUNTY GRAMMAR SCHOOL *v.* GEORGE
T. HOWARD AND S. BLANCHE KENT.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed October 6, 1910.

*Ejectment—Disclaimer—Costs—Tenancy in Common—Public*
*Lands—Grant—Acceptance—Ejectment—Title—Grant to Pub-*
*lic Use—Evidence of Title—Requisites of Title—Abandonment*
*—Requisites—Limitation of Actions—Application to Public*
*Ownership—Adverse Possession—Constitutional Law—Obliga-*
*tion of Contracts—Evidence—Presumptions—Deeds—Recitals.*

Where it appeared on the trial of an action of ejectment on plea of the general
   issue, that before suit brought one defendant had parted with all his
   title and possession of the demanded premises, on his motion the
   court properly gave him judgment for his costs, although he had not
   disclaimed according to P. S. 1844, providing that in such action, if
   a defendant disclaims as to the whole of the demanded premises,
   he shall recover his costs, unless plaintiff proves such defendant in
   possession of all or a part of the demanded premises at the commence-
   ment of the action; for whether that statute applies or not, defendant
   was not bound to disclaim, and thereby admit plaintiff's title, but
   had the right to put in issue the whole declaration by his plea of not
   guilty.

Because of the beneficial nature of governmental grants, the grantee's acceptance thereof is presumed, where he does not expressly dissent.

Where in the charter of a town five land rights were reserved to designated public uses, to one of which plaintiff succeeded while that right was undivided, he became, on accepting the same, tenant in common of all the undivided lands in town and continued to be such until all the land called for by its grant was located to its right in some way, or compensated for under the "quantity for quality" clause of the charter, unless otherwise precluded.

Where the Legislature granted three of the undivided lots in a certain town for a designated use, the grant was an entirety, and the taking and leasing by the grantee of two of the lots that were duly assigned and set out was an express acceptance of the whole grant; and so, if the third lot remained undivided land, said grantee had sufficient title thereto as tenant in common to enable it to recover the whole lot in an action of ejectment against a stranger.

A deed of land is not evidence of title where it does not appear that the grantor has either title or possession of the land described therein.

In ejectment, legal title of the demanded premises in plaintiff, with the right to immediate possession, is sufficient for recovery.

There can be no presumption of the nonacceptance of a grant from nonuse, where there is an acceptance.

A person is not estopped by silence unless he was silent when he ought to have spoken, or was negligent when he ought to have been vigilant, and another was misled thereby to his hurt.

Though inchoate rights and equitable and executory interests in land may be lost by abandonment, full legal title thereto can be so divested only when the circumstances are sufficient to work an estoppel to assert title, or where possession is acquired by another in consequence of the abandonment, and held under a claim of right for the statutory period of limitation.

Where there is neither estoppel nor limitation, there can be no abandonment that will affect the right of the holder of the legal title to land, no matter how formal the abandonment short of a conveyance.

Where, long before any of plaintiff's rights in lands held by it for a public use had been barred by limitation, existing laws were passed declaring that the statute of limitations should not extend to land given or appropriated to a public use, plaintiff could not lose title to such lands by limitation.

Where plaintiff had no power to convey lands held by it for a public use, a grant of such lands cannot be presumed from lapse of time.

Where plaintiff is a corporation aggregate with perpetual succession, a grant of land to it by the Legislature needs no words of perpetuity, vests a title indefeasible by the State, and is a contract the obligation of which the State cannot impair.

In order that presumption may be indulged, it is not necessary to believe

that the thing presumed has been actually done, but it is sufficient if the evidence leads to the conclusion that it might have been done, and that its existence would be a solution of the difficulty arising from its non-existence.

Since possession, in order to raise a presumption to protect it must be adverse, the mere neglect by the holder of the written title for any length of time to assert his right will not raise a presumption against him, in the absence of adverse possession; nor will the length of time during which such possession continued be presumed, but must be proved.

The force of possession as the ground of presumption of a grant may be repelled by circumstances, such as the owner's ignorance of the existence of the right; and where the population is spasre, and the possession a matter of little notoriety, a longer time will be required to raise the presumption than where the population is dense.

Where grantees of growing timber from one having neither title, color of title, nor possession, entered upon the land under a claim of right to take off the timber, that entry amounted to an ouster of the true owner.

Where it appears that between designated dates tortfeasors under a claim of right entered on land to take off the timber, it will not be presumed that their possession continued during the whole of that time, and, if discontinued during that time, the constructive possession of the rightful owner would be restored by operation of law, for title and possession go together where there is no adverse possession.

Recitals in a deed are evidence in favor of strangers as admissions, not only against the parties to the deed, but also against those claiming under them.

EJECTMENT. Plea, the general issue. Trial by jury at the June Term, 1909, Caledonia County, *Miles*, J., presiding. It appearing that defendant Howard before suit brought had parted with all title and possession of the demanded premises, he had judgment for his costs. Verdict ordered for defendant Kent, and judgment thereon. The plaintiff excepted. The opinion fully states the case.

*Howe & Hovey, B. E. Bullard,* and *Elisha May* for the Plaintiff.

If the lot in question was never located to plaintiff's right, then is plaintiff tenant in common of all the lands in Hardwick, and as such may maintain this action against a stranger. *Pomeroy* v. *Mills,* 3 Vt. 279; *Johnson* v. *Tilden,* 5 Vt. 426; *Sumner* v. *Conant,* 10 Vt. 17.    Nor is plaintiff barred under P. S. 1575,

as there can be no estoppel nor limitation as to plaintiff. Acts of 1801 and 1802, Nos. 2 and 3; Laws of Vermont 1808, pp. 410, 411; *U. V. M.* v. *Reynolds,* 3 Vt. 543; *Drouin* v. *Boston & Maine Railroad,* 74 Vt. 343.

If the lot in question was allotted to plaintiff, there was no need of a formal acceptance, as an acceptance in such case is presumed. *Church* v. *Church,* 80 Vt. 228; 1 Perry on Trusts, § § 259, 260, 401; Jones on Landlord and Tenant, §70; 1 Jones Ev. §49.

It is conceded that plaintiff took and leased two of the lots constituting the grant, and this was an acceptance of the whole grant, including the lot in question. In *Ross* v. *Barclay,* 18 Penn. St. 179, 55 Am. Dec. 616, it was decided that a trustee could not accept a trust of lands in New York and deny it in Pennsylvania. *Hazard* v. *Martin,* 2 Vt. 77; *Townsend* v. *Downer,* 32 Vt. 210; *Spencer* v. *Carr,* 45 N. Y. 406; *Crain* v. *Wright,* 114 N. Y. 307; *Miller* v. *Lindsey,* 1 McLean, 32, No. 9, 580 Fed. Cas. Nor was there ever any abandonment of plaintiff's right. "To constitute an abandonment of a right secured, there must be a clear, unequivocal, and decisive act of the party, an act done which shows a determination in the individual not to have a benefit which is designed for him." *Breedlove* v. *Stump,* 3 Yerg (Tenn.) 257; *Wasson* v. *Anderson,* 62 Tenn. 290; *Dawson* v. *Daniel,* 3669 Fed. Cas.; *Moon* v. *Rollins,* 36 Cal. 333, 95 Am. Dec. 181; *Banks* v. *Banks,* 77 N. C. 186. There could be no abandonment in this case by nonuse. *Noble* v. *Sylvester,* 42 Vt. 146; *Arnold* v. *Stevens,* 24 Pick. 112; *Mason* v. *Horton,* 67 Vt. 266. There must be shown an intention to abandon before abandonment can be found. *Wiggins* v. *McCleary,* 49 N. Y. 346. Abandonment can not be inferred from length of time, however long. *Langdon* v. *Templeton,* 66 Vt. 173. The question of abandonment is one of fact to be found by the jury under instructions. *Roberts* v. *Meger,* 30 Cal. 676; *Jones* v. *Merrimack River Lumber Co.,* 31 N. H. 381.

*Walter A. Dutton* and *H. Henry Powers* for the defendants.

Defendant Howard properly had judgment for his costs. He need not disclaim. A disclaimer admits plaintiff's title, and puts in issue the possession only. *Stevens* v. *Griffith,* 3

Vt. 448; and when there is no disclaimer, there is no admission of title in plaintiff, and the general statutory provisions as to costs apply.

It was error to admit in evidence the recitals in the executors' deed which is referred to in Kent's deed, as defendants are not bound by recitals in deeds to which they are not parties or privies. *Patter* v. *Washburn*, 13 Vt. 558; *Bank of Middlebury* v. *Rutland*, 33 Vt. 414; *Wilder* v. *Davenport*, 58 Vt. 642; *Capen's Admr.* v. *Sheldon et al.*, 78 Vt. 39; *Davis et al.* v. *Moyles*, 76 Vt. 25.

ROWELL, C. J.   This is ejectment for lot No. 10 in the 18th range of lots in Hardwick in Caledonia county, alleged to be a part of a public right, and drawn to the right of the plaintiff. Plea, the general issue and trial by jury.

The town of Hardwick was chartered in 1781.   The grant was to sixty-seven persons specifically named in equal shares, which, together with the five rights reserved to the several public uses therein named, included the whole town.   One of the rights thus reserved was for "the use of county grammar schools," which said right, and the right reserved for the use of a seminary or college, and the improvements, rents, interest, and profits arising therefrom, were to be under the control, order, direction, and disposal of the General Assembly of the State forever; and the proprietors of the town were thereby authorized and empowered to locate said two rights "justly and equitably, or quantity for quality," in such parts of the town as they or their committee should judge would least incommode the settlement of the town.   And the proprietors were empowered to locate the other three rights in a similar manner.

By an act to establish the County Grammar School of said county, passed in 1795, which located said school in the town of Peacham, certain persons therein named were appointed trustees of said school, and they and their successors declared to be a body corporate and politic in law, to be called and known by the name of "The Trustees of Caledonia County Grammar School," and were fully authorized and empowered to hold and lease the lands lying within said county, granted for the use and benefit of a county grammar school, with such donations

in land or other property as had been or might be given for the use and benefit of said institution.

The defendants conceded that the town of Peacham fulfilled the obligations imposed upon it by said act, and that the plaintiff organized thereunder in 1795, and has continued its regular work as a grammar school from 1796 to the present time.

The defendant Kent claims under a deed from the defendant Howard, dated Dec. 14, 1905, purporting to convey one equal undivided third part of all and the same land deeded to him by the executors of the last will and testament of Alden E. Judevine, by their deed of Dec. 4, 1905, to which it refers for a more definite description.

It was conceded that by virtue of her said deed the defendant Kent claimed to own a third interest in the demanded premises at the time this suit was brought, and that she was then in possession of the whole lot.

The executor's deed referred to in the defendant Kent's deed, purports to convey, among other lands, all of the lands situated in the "gulf" so called, in the northwesterly corner of Hardwick, of which the said Judevine died seised, and which had, since his death, been lumbered by Stevens, Graham, and Kinney, except what had been conveyed by the executors to F. J. Chickering and Mrs. F. T. Chickering, and supposed to be, the deed says, lots 10 and 11 in the 15th range; lots 10, 12, and one-half of lot 11 in the 16th range; lots 10, 11, and 12 in the 17th range; and lots 10, 11, and 12 in the 18th range,—with the buildings thereon standing and the appurtenances thereof.

It appearing that the defendant Howard before suit brought had parted with all title and possession of the demanded premises, the court, on his motion, gave him judgment for costs, to which the plaintiff excepted because he had not disclaimed according to P. S. 1844. But whether that statute applies or not, he was not bound to disclaim and thereby admit the plaintiff's title, but had a right to put in issue the whole declaration by his plea of not guilty. *Stevens* v. *Griffith*, 3 Vt. 448, 456; *Marshall* v. *Wood*, 5 Vt. 250. He was, therefore, entitled to costs under the statute giving costs to the recovering party.

The defendant Howard being thus let go, the case proceeded against the defendant Kent alone.

The plaintiff claims that its evidence tended to show that the town of Hardwick was divided by the proprietors into three divisions of six ranges each; that each range had twelve lots, numbered from one to twelve, beginning on the Woodbury line and ending on the Greensboro line; that one lot in each division was assigned to each of the sixty-seven proprietors, and one to each of the five public rights, including the right granted to the plaintiff by its charter; that in 1797 the plaintiff leased its lot in the second division, and in 1813, its lot in the first division, both of which leases were recorded; but that it never leased any lot in the third division.

The plaintiff also claimed that its evidence tended to show that each of the proprietors were assigned a lot in the third division, and that the four public rights in that division other than the plaintiff's right were taken possession of and leased by the respective beneficiaries thereof as early as 1821; that the proprietors and said four public rights took every lot in that division except the lot in question; that the third division lots were in the west part of the town, and were not settled so soon as those in the first and second divisions; that the lot in question was near the corners of Hardwick, Greensboro, and Wolcott, on a mountain more than four miles from any village, and not easily accessible; that no one ever settled on it; and that there was no evidence of the cutting of timber on it, nor of other occupancy of it nor dominion over it by said Judevine nor any one for him, and that there was none after his death in 1888 until about ten or twelve years ago, when one of the executors sold the timber on it and on one of the adjoining lots in Hardwick that the estate claimed to own; and that then the lot in question was stripped of its timber.

The defendant claims that the plaintiff's evidence did not tend to show what it claims it did, and the transcript of the evidence is referred to for the purpose of determining its tendency in this respect.

It was conceded that no lease, deed, nor other conveyance or grant of this lot to said Judevine could be found on the land records of Hardwick nor elsewhere, and it appeared that the plaintiff and the defendants had made search, and that the plaintiff had made a minute and very careful examination of

said records of Hardwick from the earliest time down to 1844 or 1845.

The plaintiff conceded that its present trustees had no knowledge of its right to the lot in question until 1908 or early in 1909, and had no knowledge that former boards of trustees knew about its right thereto. The plaintiff claimed that its grant was of a whole right, and that this right included a lot in each division; that its acceptance was of a whole right, which, it claimed, included the lot in question; that the records kept by the trustees showed nothing about leasing nor disposing of the lot, nor of receiving rent therefor.

It was conceded that Cornelius Judevine, who appeared as a grantor or grantee in deeds admitted in evidence, was the father of Alden E. Judevine, and that Harvey Judevine was his brother, and that all the land that either of them owned came to Alden E. Judevine.

The plaintiff's evidence tended to show that it had leased land in other parts of Hardwick as early as 1807 and 1813, but there was no evidence tending to show that it had ever leased the lot in question nor taken actual possession of it. It claimed, however, that if the lot was assigned or drawn to the right of the grammar school, the law presumed an acceptance of the grant and such possession as the law would warrant.

The defendant conceded that the five public rights were assigned or set apart in the first and second divisions, and that leases were made of all of them.

At the close of plaintiff's evidence in its opening, the defendant Kent moved for a verdict, (1) for that on the whole evidence the plaintiff had failed to show any title or possessory right to the lot in question; (2) for that the plaintiff had not shown that said lot was ever located by the proprietors in accordance with the provisions of the charter of Hardwick; (3) for that if the lot was ever located for the plaintiff, it must, by its nonuse of the grant for more than a century, be taken either not to have accepted the grant nor the benefit thereof, or to have abandoned it; (4) for that the evidence calls for a conclusive presumption of a grant to the defendant. The motion was sustained, a verdict for the defendant ordered, and judgment thereon, to which the plaintiff excepted.

Passing all else, and coming at once to a consideration of this motion, it is clear that the plaintiff's grant, if accepted, made it a tenant in common of all the undivided lands in town, with all and singular the rights and incidents of such a tenancy. *University of Vermont* v. *Reynolds*, 3 Vt. 542, 553. And it would continue to be such tenant until all the land called for by its grant was located to its right in some way or compensated for under the "quantity for quality" clause of the town charter.

It is also clear that here was an acceptance of the grant by the plaintiff, for the law is in respect of government grants, state and national, that if the grantee does not expressly dissent, his assent and acceptance are to be presumed from the beneficial nature of the grant. And such is the law in England as to grants from the crown. *United States* v. *Schurz*, 102 U. S. 378, 400. And here was no dissent, express nor otherwise, but an actual assent and acceptance instead, as sufficiently appears by the defendant's concession that the five public rights were assigned and set out in the first and the third divisions, and leases made of all of them, for the plaintiff's grant is an entirety, and taking and leasing two lots under it was an acceptance of the grant as a whole, and made it effective to the full extent of the right. Thus, in the case last cited it was held that the long pursuit of his claim by a preëmptor of public lands, his repeated demand for the patent after it was perfected, and his persistent efforts to obtain possession of it, were ample proof of his acceptance of the grant of which it was the evidence.

It follows, therefore, if all the land called for by the plaintiff's grant has not been located to its right nor compensated for under the "quantity for quality" clause of the town charter, and if the lot in question is still undivided land, and the plaintiff is not otherwise precluded, that it has sufficient title as tenant in common to enable it to recover the whole lot of a stranger. *Pomeroy* v. *Mills*, 3 Vt. 279; *Johnson* v. *Tilden*, 5 Vt. 426; *Chandler* v. *Spear*, 22 Vt. 388, 408.

Thus it appears that the plaintiff's title as tenant in common was coeval with its existence; and as the testimony, viewed most favorably for the plaintiff, as it must be, a verdict having been directed against it, would have warranted the jury in finding that the lot in question was then common and undivided

land, such must be taken to be the fact, and being so taken, the plaintiff made out sufficient title thereto without more, to enable it to recover the whole lot of the defendant, who is, as the case is presented, a stranger to all title, for the deed under which alone she claims is no evidence of title, as it does not appear that her grantor had any title, possessory nor otherwise. *Bank of Middlebury* v. *Rutland,* 33 Vt. 414; *Blondin* v. *Brooks,* 83 Vt. 472. And legal title in the plaintiff, with the right to immediate possession, is enough for recovery. *Rood* v. *Willard,* Brayt. 67. Therefore it was not necessary for the plaintiff to show that the lot was located to its right by the proprietors, nor otherwise. Nor does it appear that it was ever drawn to any other right.

Nor can nonacceptance of the grant be presumed from nonuse, for, as we have seen, there was an acceptance.

As to abandonment, that is argued on the ground of estoppel by silence and negligence. But a party is not estopped thus unless he was silent when he ought to have spoken, or was negligent when he ought to have been vigilant, nor unless another was misled thereby to his hurt. But here no misleading appears, and so no estoppel. It is unnecessary, therefore, to consider whether there was culpable silence or culpable negligence. And as to abandonment without estoppel, defendant's counsel hardly claim it, and could not well, for though inchoate rights and equitable and executory interests in land may be lost by abandonment, a full legal title thereto can be divested by abandonment only when the circumstances thereof are sufficient to raise an estoppel to assert title, or when possession is acquired by one in consequence of the abandonment, and held under a claim of right for the statutory period of limitation. And when there is neither estoppel nor limitation, there can be no abandonment that will affect the right of the holder of the legal title, no matter how formal the abandonment short of a conveyance. *Putnam* v. *Tyler,* 117 Pa. St. 570, 584; 3 Wash. Real Prop., 6th ed., 77; Tiedman, Real Prop., 3d ed., §516.

Nor can there be any limitation here, for as early as 1801 and 1802, long before any of the plaintiff's rights could have been barred, laws were passed, and have ever since been in force, that nothing contained in the Statute of Limitations should

extend to lands given, granted, sequestered, or appropriated to a public, pious, or charitable use. Nor is there any evidence of a possession of this lot that would ripen into title against other tenants in common; and if there was, it would not preclude the plaintiff from recovering its share, as the case tends to show an ouster by the defendant.

As to presuming a grant from the plaintiff as distinguished from a lease, that cannot be, for the plaintiff had no power to make one. *University of Vermont* v. *Reynolds*, 3 Vt. 542. Neither can a lease be presumed, for though it had power to make one, yet the testimony and the admissions tend to show that it never has, and therefore such must be taken to be the fact, which precludes the presumption of a lease, for presumptions are indulged in only to supply the absence of evidence respecting the thing to be presumed, and have no place for consideration when the evidence is present. *Vaughn* v. *Congdon*, 56 Vt. 111, 116.

Nor can a grant be presumed from the State, as it was powerless to make one, for the plaintiff being a corporation aggregate with perpetual succession, its grant needed no words of perpetuity, and was as unconditional and as absolute and effective as if it had been to a man and his heirs and assigns forever; and vested a title indefeasible by the State, and is a contract, the obligation of which the State can not impair. This was so held in a case in favor of this very plaintiff against *Burt*, 11 Vt. 632.

But, of course, the plaintiff's grant must be taken as subject to the "quantity for quality" clause of the town charter, and under that clause the defendant claims that it should be presumed that its grant was satisfied by the location to its right of the lots in the first and the second divisions. Although it is true, as said in *University of Vermont* v. *Reynolds*, 3 Vt. 542, 558, that a grant, or the extinguishment or surrender of a grant, or, in short, anything that will confirm a long continued possession, may be presumed, not because it is necessary to believe that any such acts were actually done or executed, but for the purpose of quieting possession; yet, for a proper application of that general doctrine, regard must be had to the ground and reason of such presumptions, and to the kind and character

of the possession sought to be quieted thereby. In *Ricard* v. *Williams,* 7 Wheat. 59, 109, Mr. Justice Story, speaking for the court, said that presumptions of this kind are adopted because of the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions; that they are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs have occurred, unless there was a transmission of title to, or an admission of an adverse title in, the party in possession; that they may be encountered and rebutted by contrary presumptions, and can never fairly arise when all the circumstances are perfectly consistent with the nonexistence of a grant, nor when the claim is of such a nature as is at variance with the supposition of a grant; that in general it is the policy of courts of law to limit presumptions of this kind to periods analogous to those of the Statue of Limitations, in cases not within the statute, but when the circumstances are very cogent and full, that there is no absolute bar against such presumptions within a period short of that of the statute. But, as we have seen, it is not necessary to believe that the thing to be presumed was actually done. It is enough if the evidence leads to the conclusion that it might have been done, and that its existence would be a solution of the difficulty arising from its nonexistence. *Fletcher* v. *Fuller,* 120 U. S. 534, 547. But possession, in order to raise a presumption to protect it, must be positively and essentially adverse. *Casey's Lessee* v. *Inloes,* 1 Gill 430, 39 Am. Dec. 658, 679; *Edson* v. *Munsell,* 10 Allen 557, 568; 1 Phil. Ev., Cow. & Hill's Notes, 558. Therefore mere neglect for any length of time of the holder of written title to assert his right will not raise the presumption, there being no adverse possession against him. *Doe* v. *Butler,* 3 Wend. 150. Nor will the length of time during which possession continued be presumed, but must be proved. *Hurst's Lessee* v. *McNeil,* 1 Wash. C. C. Rep. 70, 80; 1 Phil. Ev., Cow. & Hill's Notes, 558. And the force of possession as a ground of presumption may be repelled by many circumstances. It may by the ignorance of the owner that the right existed. 1 Phil. Ev. 558. So where the population is sparse and the possession a matter of little notoriety, a greater

length of time will be required to raise the presumption than where the population is dense, and the possession of a nature to arrest general attention.  In a case of the former kind it was held that thirty years were insufficient to raise the presumption.  *Wilson* v. *Stoner*, 9 S. & R. 39, 11 Am. Dec. 664.

In *University of Vermont* v. *Reynolds*, 3 Vt. 542, it was held that thirty-eight years were sufficient.  But there the circumstances were so cogent that they required the presumption of the abandonment or the surrender of a charter of the town under which no claim had been asserted, or an antecedent or a subsequent grant to the inhabitants who were in the actual occupancy of their lands.

In *Townsend* v. *Estate of Downer*, 32 Vt. 183, twenty-nine years were held sufficient.  But the case was considered as within the rule that deeds and grants of land may be shown by presumptive evidence where there has been possession corresponding to the grant, and where auxiliary circumstances exist making it reasonable to believe that such deed or grant may have in fact been made, and where the circumstances are not equally consistent with the nonexistence of such deed or grant.

But here Judevine never had title, color of title, nor possession of the lot in question, though he claimed to own it, and perhaps had a plan of the town on which its location was indicated, and at one time tried to sell it by quitclaim, but could not.  His estate, therefore, had no more right than he had, and when his executors assumed to sell the timber thereon to Howard in 1894, they had neither title, color of title, nor possession, and so Howard took nothing by his purchase, not even color of title, for it does not appear that the sale was made in a way to constitute color of title.  And the same may be said of those to whom Howard sold the timber, but their entry to take it off was an ouster of the true owner, as it was under a claim of right; *Whitney* v. *French*, 25 Vt. 663; *Lathrop* v. *Levarn*, 83 Vt. 4; and inured to the executors as possession while it lasted.  But Howard's vendees were mere trespassers in their entry, and tortfeasors throughout their operations.  But when the executors conveyed to Howard all the right, title, and interest of the estate in and to said lot, he was thereby clothed with color of title, the description being sufficiently specific, and his

deed to the defendant gave her color of title. But it does not appear how long the possession of the tortfeasors continued, for it does not appear when it commenced nor when it ended, further than it is said in the plaintiff's brief, and not denied, that the timber was cut off between 1895 and 1905. But it will not be presumed that their possession continued during that time, and if it was discontinued at any time during that period, then by operation of law the constructive possession of the rightful owner was restored, for title and such possession go together when there is no adverse possession. But even if that whole period be augmented by the time the defendant had been in possession when suit was brought, it would fall short of the statutory period for acquiring title by adverse possession. It follows, therefore, according to *Ricard* v. *Williams*, 7 Wheat. 59, 109, that the presumption contended for can not be made, for there are no circumstances sufficiently cogent to warrant it. But if the time overran the statutory period, still the presumption could not be made, for the facts are not such as could not have occurred according to the ordinary course of human affairs unless the plaintiff's grant was satisfied as claimed, for it is quite within the course of such affairs in this State for men, without right and against right, to take possession of vacant timber lands lying as here in remote and sparsely settled regions not easily accessible, for the very purpose of appropriating them to their own use and laying a foundation for acquiring title thereto by adverse possession.

And further, the evidence does not lead to the conclusion that the grant might have been thus satisfied, but is perfectly consistent with its not having been.

It must be taken that this part of the town was divided into lots, for the executors' deed, referred to in the defendant Kent's deed for more definite description and thereby made a part of it, describes the lot in question by number and range, as it does several other lots in that part of the town that it purports to convey, and therefore it is evidence of such division against the defendant Kent, the rule being that recitals in deeds are evidence in favor of strangers as admissions not only against the parties thereto, but against those claiming under them as

well. *Davis* v. *Moyles*, 76 Vt. 25; *McKinnon* v. *Bliss*, 21 N. Y. 206; 1 Phil. Ev., Cow. & Hill's Notes, 390.

As the holdings thus far reverse the judgment, and as it can not be foretold whether any and what changes will be made in the case on another trial, it is deemed unnecessary to consider whether the lot in question was ever located to the right of the plaintiff by acquiescence or otherwise.

*Judgment reversed, verdict set aside, and cause remanded.*