CHARLES D. HAZEN ET AL. *v.* SUMNER W. PERKINS.

Special· Term at St. Johnsbury; April, 1918.

Present: WASTON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 8, 1918.

*Acts of Public Officials—Presumption—Public Waters—Lands*
*Bounding—Title To—Control of by Private Persons for*
*Private Purposes—Grant by Legislature—Regulation of*
*Common Fishery—G. L. 1875—Title by Prescription—*
*Lower Mill Owner—Public Nuisance—Remedy by State—*
*Rights of Riparian Owners—Special Damage.*

Lake Morey, covering an area of six hundred and forty acres, being ex-
    tensively used for boating with rowboats, canoes, motor boats, and a
    steamer, and having boathouses, retaining walls, and structures on
    its shores for use in getting into and out of boats, is boatable, as
    matter of law, and is public waters within the provision of the
    Constitution (Chap. II, sec. 63).

It will be presumed, the contrary not being shown, that the fish and
    game commissioners, in constructing a dam and sluice at the outlet
    of Lake Morey, pursuant to the directions of No. 140 of the Public
    Acts of 1896 and No. 228 of the Public Acts of 1908, authorizing
    and directing them to make such repairs to the outlet of the lake as
    was necessary to protect its waters, the fish therein, and the prop-
    erty below the outlet, acted in accordance with the law and their
    instructions, and that the dam and sluice constructed by them did
    not work any violation of the rights of the riparian proprietors.

Grants of land bounding upon a boatable lake pass title only to the
    water's edge, or to low-water mark if there be a definite low-water
    line.

Title to the waters of a boatable lake as such, or to the lands covered
    by the same, cannot be acquired by grants from private sources.

The waters and the bed or soil of boatable lakes are held by the people
    in their character as sovereign in trust for public uses for which
    they are adapted.

The General Assembly cannot grant to private persons for private
    purposes, the right to control the height of the water of a boatable
    lake, or the outflow therefrom, by artificial means, for such a grant
    would be inconsistent with the exercise of such trust.

A grant of the right to control the height of the water of a boatable lake, or the outflow therefrom, by artificial means, for private purposes, cannot be intended as the basis of a decree, since the General Assembly is powerless to make such a grant.

The power of proper regulation of common fishery in the public waters is reserved to the General Assembly by the Constitution (Chap. II, sec. 63); and, in the exercise of the police power, it may adopt such constitutional measures as it deems necessary for the preservation of such public property and the common rights therein.

No. 140 of the Public Acts of 1896 and No. 228 of the Public Acts of 1908 were proper measures for the protection of common fishery in Lake Morey.

Under G. L. 1875, providing that nothing contained in the statute of limitations shall extend to state lands, a right to control the flow of water from a boatable lake by artificial means, cannot be acquired by prescription.

A lower mill owner has no right, by artificial means, to vary the level of the water of a boatable lake above or below its natural level, as regulated and controlled by a dam and sluice lawfully erected at its outlet by the State.

A gate and flashboards unlawfully placed at the outlet of a boatable lake, whereby its water is raised above or lowered below its natural level, as regulated and controlled by the State, affect the common rights of all persons, and constitute a public nuisance, against which a remedy may be had in behalf of the State, either in equity or by way of criminal prosecution.

To entitle plaintiffs to maintain a private suit in equity for injunctive relief against such public nuisance, they must show that they have suffered some special and substantial injury distinct and apart from the general injury to the public.

The rule that a right to maintain a public nuisance cannot be acquired by prescription, obtains in actions by private individuals, who have suffered a peculiar injury.

In a suit in equity to enjoin the defendant from maintaining a public nuisance by unlawfully raising and lowering the water of a boatable lake by artificial means, and to recover private damages suffered thereby, where it is found that the plaintiffs suffered nominal damages only, apart from the general injury to the public, the bill will be dismissed.

APPEAL IN CHANCERY, Orange County.   Heard on special master's report, and plaintiffs' exceptions thereto, in chambers on March 8, 1917, *Fish,* Chancellor.   Decree that the bill be dismissed with costs to the defendant.   The plaintiffs appealed.

*Charles Batchelder* for the plaintiffs.

The court will take judicial notice of the fact that Lake Morey is one the largest bodies of water in the State.   *Cash* v. *Auditor, etc.,* 7 Ind. 227; *State* v. *Wabash Paper Co.,* 21 Ind. App. 167; *Sudbury Meadows* v. *Middlesex Canal,* 23 Pick. 36, 45; *Talbot* v. *Hudson,* 16 Gray, 417, 424.

Capacity is the test in determining if waters are navigable. The Montello, 20 Wall. 430, 22 L. ed. 391; *People* v. *Canal Appraisers,* 33 N. Y. 461; *Weise* v. *Smith,* 3 Ore. 445, 8 Am. Rep. 621.

If the situation is such that in all probability the waters will become useful for business or pleasure, then they are public. Farnham on Waters, 127; *Walker* v. *Allen,* 72 Ala. 456; *Rhodes* v. *Otis,* 33 Ala. 578, 73 Am. Dec. 439.

Waters navigable in fact are navigable in law, if reasonably capable of available use as a public highway.   *Concord Mfg. Co.* v. *Robertson,* 66 N. H. 125 Atl. 718; *Morgan* v. *King,* 35 N. Y. 554; *Barney* v. *Keokuk,* 94 U. S. 324; Cooley Cons. Lim. 726-728.

Owners along an outlet stream, flowing from a natural pond, have nothing but the right to the natural flow.   They cannot operate devices to regulate the level of the pond, but must take as nature provides.   *Mohr* v. *Gault,* 10 Wis. 513, 78 Am. Dec. 687; *Fernald* v. *Knox Woolen Co.,* 82 Me. 48; *Potter* v. *Howe,* 141 Mass. 354, 6 N. E. 233.

*John G. Sargent* and *David S. Conant* for the defendant.

WATSON, C. J.   The plaintiffs, severally owners of land abutting on Lake Morey, a natural body of water in the town of Fairlee, on which are built cottages for summer occupancy, seek an injunction against defendant, requiring him to remove the gate and all structures erected by him at the outlet of said lake for the purpose of affecting the level thereof, and perpetually enjoining him from erecting or maintaining at said outlet any artificial structure for the purpose of raising or lowering the

water of the lake, and to recover damages suffered in the premises.

The outlet of the lake is a small stream which flows southerly and southeasterly into the Connecticut river. The plaintiffs Hazen, Watson, and Low, are the owners in common of a water privilege, known as the Pierce privilege, on the outlet stream. The defendant owns and occupies certain lands and a water privilege, here known as the Perkins privilege, on the outlet stream southerly of and below the Pierce privilege, and claims and has exercised the right, in connection with the use of his water privilege, to raise the water of the lake by means of a gate and flashboards at the outlet, for the purpose of conserving the water supply at his privilege, and to lower the same as his needs at the latter place may require. His mills are 382 rods from the outlet of the lake, and the crest of his dam is about 15½ feet lower than the crest of the outlet dam. He owns no land abutting on the lake.

The defendant claims that he had the right, by grant through successive owners from one of the original proprietors of the town, to control the flow of water from the lake in connection with the use and enjoyment of his said water privilege, and that he and his successive grantors in title have exercised such right continuously, openly, notoriously, exclusively, and under a claim of right, for more than one hundred and twenty years, and down to the bringing of this bill.

The case was heard by the chancellor on the report of a special master and plaintiffs' exceptions thereto. The exceptions were overruled and the bill dismissed with costs to the defendant. The plaintiffs appealed; but in presenting the case for review they take no note of the exceptions. Our considerations are therefore confined to the rights of the parties as based upon the pleadings and the facts of record.

It is argued that this Court knows judicially that the waters of Lake Morey are public waters. Very likely we might take judicial notice that the waters of this lake are boatable, as a part of the principal features of the geography of the State (The Montello, 11 Wall. 411, 20 L. ed. 191), were it necessary in determining their character; but it is not necessary. The master reports that this lake has an area of some six hundred and forty acres; that on its shores are located from eighty to one hundred cottages, occupied during the summer season for pur-

27

poses of pleasure and recreation; that there are also located on the
lake two hotels and a large casino or place of amusement, and
several girls' camps, so that during the camping season the lake
is a considerable summer resort, the number of people annually
frequenting it as such being estimated at about seven thousand;
that the lake is used extensively for boating by the occupants of
the cottages around it, for which purpose a considerable number
of rowboats and canoes are used, together with ten or more
motorboats; that a steamboat plies thereon, making regular trips
during the summer season for the purpose of carrying passengers
around the lake; and that on the shore adjacent to some of the
cottages are boathouses and retaining walls, and structures of
one sort or another for use in getting into and out of the boats
and canoes.    On these facts the waters of Lake Morey are boat-
able, as matter of law, and therefore they are public waters with-
in the provisions of the Constitution as construed in *New Eng-
land Trout and Salmon Club* v. *Mather,* 68 Vt. 338, 35 Atl. 323,
33 L. R. A. 569.    And they have been so deemed and acted upon
by the General Assembly: by No. 140 of the Public Laws of 1896,
the fish and game commissioners were authorized and directed to
examine the outlet of this lake, and to take such steps as might
be necessary in repairing the same to protect the waters of the
lake and the property below the outlet, money being appropriated
for such purpose; again by No. 228 of the Public Acts of 1908,
the fish and game commissioner was directed to make a similar
examination, and to cause such repairs of the outlet to be made
as were necessary for the protection of the waters of the lake
and the fish therein.

During the years 1897-1898 the fish and game commis-
sioners, pursuant to the directions of the former act, caused to be
constructed at the outlet a pile dam in the neighborhood of
three hundred feet long, with a sluice some forty feet long and
two feet wide, and having a plank bottom to serve as an outlet.
The bottom of this sluice was fixed at a level several inches higher
than the bottom of the old sluice.    Across the new sluice, as an
obstruction to the flow of water through it, were placed two
planks two inches wide and one four inches wide.    No gate was
constructed in the sluice, so that, except as controlled by natural
causes, the top of these planks fixed the height of the water in
the lake.    No claim is made that the dam and sluice, so put in
by the State, caused the water to encroach upon the lands of the

riparian proprietors, or worked any violation of their rights. And it will be presumed, the contrary not being shown, that these public officers acted in accordance with the law and their instructions. But after such work was done, the defendant put in the gate now existing at the outlet, by cutting out the two botom planks and constructing a gate to operate on the inside, or lake side, of the remaining plank, with a means of raising and lowering the same. From this we understand that the gate did not operate to raise the height of the water of the lake, but it enabled the defendant to lower it to the level of the bottom of the sluice, eight inches below the level fixed by the authorized agents of the State. In addition to the use of this gate, defendant has used flashboards at the outlet to raise the level of the lake whenever he needed more storage of water for his mills, and he appears to have done this from time to time ever since he acquired title to his water privilege in March, 1895. He admitted having used two flashboards consisting of 2 x 4 pieces, which would raise the normal level eight inches. No finding is made at variance with this admission.

Being public waters according to the test afforded by the Constitution, the grants of land bounding upon the lake pass title only to the water's edge, or to low-water mark if there be a definite low-water line. *Fletcher* v. *Phelps*, 28 Vt. 257; *Jakeway* v. *Barrett*, 38 Vt. 316; *Austin* v. *Rutland R. R. Co.*, 45 Vt. 215. The bed or soil of such boatable lakes in this State is held by the people in their character as sovereign in trust for public uses for which they are adapted. *Illinois Central R. R. Co.* v. *People*, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. ed. 1018; *Revell* v. *People*, 177 Ill. 468, 52 N. E. 1052, 69 Am. St. Rep. 257, 43 L. R. A. 790. The defendant did not, therefore, acquire any title to the waters of the lake, as such, nor to the lands covered by such waters, by grants from private sources. And the General Assembly cannot grant to private persons for private purposes, the right to control the height of the water of the lake, or the outflow therefrom, by artificial means, for such a grant would not be consistent with the exercise of that trust which requires the State to preserve such waters for the common and public use of all. *Illinois Central R. R. Co.* v. *People*, cited above; *Priewe* v. *Wisconsin State Land, etc., Co.*, 103 Wis. 537, 79 N. W. 780, 74 Am. St. Rep. 904; *Illinois Steel Co.* v. *Bilot*, 109 Wis. 418, 85 N. W. 402, 83 Am. St. Rep. 905. The General Assembly

being powerless to make such a grant, none can be intended as the basis of the decree. *Trustees of Caledonia Co. Gram. School* v. *Howard,* 84 Vt. 1, 77 Atl. 877. The power of proper regula- tion of common fishery in such public waters is, by the Constitution, reserved to the General Assembly (Const. Chap. II, Sec. 63) ; and in the exercise of the police power, it may adopt such measures (within constitutional limits) as it deems necessary for the preservation of such public property and the common rights therein. *State* v. *Theriault,* 70 Vt. 617, 41 Atl. 1030, 67 Am. St. Rep. 695, 43 L. R. A. 290; *State* v. *Haskell,* 84 Vt. 429, 79 Atl. 852, 34 L. R. A. (N. S.) 286; *Bondi* v. *Mackey,* 87 Vt. 271, 89 Atl. 228, Ann. Cas. 1916 C, 130. Each of the legislative enactments before adverted to created means of carrying out a purpose to this end.

It is urged on the facts reported, however, that in connection with the use of his water privilege, defendant has a prescriptive right to control the flow of water from the lake by means of a dam or gate at the outlet. In disposing of this question it is not necessary to consider the application of the general rule of construction that general words used in a statute will not apply to a state to the detriment of sovereign rights or interests unless such an intent clearly appears from the language used (see *State Treasurer* v. *Weeks,* 4 Vt. 215; *Gibson* v. *Choutau,* 13 Wall. 92, 20 L. ed. 534) ; nor need we consider the facts of record on which the claim of such prescriptive right is based; for the earliest time when any artificial means of controlling the flow of water from the lake is found to have existed, was in March, 1790, and in 1801 and in 1802, before the period of the statute of limitations applicable to lands had expired, Acts were passed by the Legislature expressly declaring that nothing contained in the statute of limitations shall be construed as affecting the title to any lands belonging to the State. A similar statutory provision has hitherto existed, and is now found in G. L. 1875. With such a statute in force, no prescriptive rights, such as are here claimed by defendant, affecting real property of the State, could be acquired. *Trustees of Caledonia Co. Gram. School* v. *Howard,* cited above.

It follows that defendant has no right, by artificial means, to raise the height of the water of the lake above, or to lower it below, its natural level as regulated and controlled by the dam and sluice erected at the outlet by direction of the General Assembly,

under the provisions of the aforementioned enactments of 1896 and 1908; and the gate and flashboards put in and used by him at that place for the purpose of controlling the height of the water, and thereby raising it above, or lowering it below, its natural level, as regulated and controlled by the State, affect the common rights of all persons and produce a common injury. They therefore constitute a public nuisance, against which a remedy may be had in behalf of the State, either in equity or by way of criminal prosecution. But in order for the plaintiffs to maintain a private suit in equity for injunctive relief against such public nuisance, they must show that they have suffered some special and substantial injury, distinct and apart from the general injury to the public.

Some of the beaches around the lake are flat and more or less sandy, and the water over them shallow, this being true at . the northerly end of the lake in the vicinity of the property of plaintiff Low, and also at the southerly end near the outlet. Adjacent to the property of plaintiff Watson, the shore is rocky, coming down rather abruptly to the shore line, and then extending out very gradually into deeper water. The conditions of the lake in this respect opposite the shore properties of the other plaintiffs, are not shown by the record. Along the banks of the lake in many places are trees and shrubs, some of them growing close to the shore line.

The plaintiffs claimed damage to their cottage properties by reason of the variations in the heights of the water occasioned by the defendant in the use of flashboards as stated above, and especially: (1) That the artificial raising and lowering of the water level by him during the summer season has rendered it inconvenient and unsafe for them to use wharves erected adjacent to their lands, in getting into and out of boats used for pleasure on the lake; (2) that in some cases the wharves have been damaged by ice in the winter, owing to variations in the height of the lake occasioned by defendant, and that shade and ornamental trees growing on the shore of their lots have thereby been washed away and lost; and (3) that the shallow beaches have been left exposed by the recession of the water, so as to give off offensive odors, thereby rendering the occupancy of plaintiffs' cottages near them unpleasant and detrimental to health.

The master states that the testimony on this branch of the case appears to be inclusive, because it is impossible to draw the

line with any degree of accuracy between the natural effects of such variations in the lake level as would result from ordinary high water in the early spring and late fall, and by reason of having rains, and the enhanced effects, if any, caused by artificial increases in the high-water and low-water levels. He then reports specifically that as to the loss of shade and ornamental trees, the testimony is too vague and indefinite to warrant a finding either way; that as to the alleged damage from ice, the testimony affords no basis for determining how much, if any, defendant has raised the lake level in the winter and early spring so as to aggravate the natural effects of the ice upon the banks, and upon structures thereon; and in the other respects named, that the testimony fails to charge defendant with responsibility in fact, for substantial damage, if any, suffered by the plaintiffs.

The master states, however, that it goes without saying that any artificial variations in the height of the water of the lake have accentuated the adverse effect upon the shore properties of the plaintiffs, in respect to wholesomeness, convenience of access by water, beauty and enjoyment in use, incident to the natural fluctuations in the water level; and so he accordingly finds that plaintiffs Watson, Cookman, Mather, and Low, have sustained nominal damage to their respective shore properties by reason of defendant's acts in maintaining and operating the gate at the outlet dam, and in the use of flashboards thereon, their right to recover the same being contingent upon other considerations.

Yet such finding of nominal damage is not enough to entitle the plaintiffs to the relief sought; for the damages established as suffered must be not only special and distinct from those suffered by the general public, but they must be substantial as well. *Sargent* v. *George,* 56 Vt. 627; *Wakeman* v. *Wilbur,* 147 N. Y. 657, 42 N. E. 341; *Nelson* v. *Swedish, etc., Cemetery Assoc.,* 111 Minn. 149, 126 N. W. 723, 127 N. W. 626, 34 L. R. A. (N. S.) 565, 20 Ann. Cas. 790.

The findings show no such invasion of the rights of any of the plaintiffs as, if continued for a certain length of time, may ripen into an easement; for the rule that a right to maintain a public nuisance cannot be acquired by prescription, obtains not only in proceedings in behalf of the public, but also in actions by a private individual who has suffered injury special and peculiar to himself. *Mills* v. *Hall,* 9 Wend. (N. Y.) 315, 24 Am. Dec.

160; *Birmingham* v. *Land,* 137 Ala. 538, 34 So. 613; *Bowen* v. *Wendt,* 103 Cal. 236, 37 Pac. 149; *Meiners* v. *Frederick Miller Brewing Co.,* 78 Wis. 364, 47 N. W. 430, 10 L. R. A. 586.

In our disposition of the case it has not been necessary to determine what, if any, effect the reservation of rights of flowage in the deed of house lot No. 69 (it being the shore land now owned by plaintiff Low) from Samuel Morey (under whom defendant claims to hold the same rights) to Rufus F. Ormsby, dated October 29, 1823, might have as against Low, were that question reached. See *Troy* v. *Coleman,* 58 Ala. 570; *Marvin* v. *Brewster Iron Mining Co.,* 55 N. Y. 538, 559, 14 Am. Rep. 322.

*Decree affirmed and cause remanded.*