STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

In re Krag – Special Zoning Permit for Culvert
    (Appeal of Marks)                                              Docket No. 51-4-09 Vtec

Decision and Order

Appellant Andrew Marks (Appellant) appealed from a decision of the Development Review Board (DRB) of the Town of Shelburne, upholding the Zoning Administrator's issuance of a special zoning permit to Appellee-Applicants David and Jesusa Krag (Appellees). The special zoning permit authorized Applicants to install a culvert on their property, leading from a pond to behind a berm that had been the subject of an earlier permit. Appellant is represented by Thomas F. Heilmann, Esq.; Appellees are represented by Liam L. Murphy, Esq.; and the Town is represented by David Rugh, Esq. but did not participate actively in the trial.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken on a later date with the parties and their representatives. The parties were given the opportunity to submit written memoranda and requests for findings, and extended the time for these filings by motion. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellees own a 15.8-acre L-shaped parcel of property, comprising Lots 4 and 3-C of the former Thomas Road subdivision, located at 76 Rivervale Road in the Town of Shelburne. Appellees' property is bounded on the north and west by the

LaPlatte River, which makes a bend at the northwest corner of Appellees' property. The river flows at an elevation of approximately 150 feet above sea level in the vicinity of the properties at issue in this appeal; the river bank is at an elevation of approximately 154 feet above sea level. Appellees constructed their residence in 1993 on a plateau at an elevation of approximately 172 to 176 feet above sea level.[1] Close to the foot of the plateau, which slopes steeply downward behind (to the west of) their house, Appellees have constructed or maintained a large spring-fed pond (the Swim Pond) at an elevation of 156 feet above sea level. Another, smaller pond (the Field Pond or Lower Pond) is located farther to the west on Appellees' property, and at a slightly lower elevation, close to its southern boundary adjoining Appellant's property. The remainder of Appellees' property between the Lower Pond and the bend in the river is relatively flat but contains a shallow channel that leads water generally northward to the river northeasterly of the bend at the northwest corner of Appellees' property.

Appellant owns a 3.1-acre rectangular parcel of property located at 150 Rivervale Road. Appellant's property is bounded by the LaPlatte River on the west, bounded by Appellees' property to the north and east, and bounded by an unrelated property to the south. The easterly end of Appellant's property contains an extension of the plateau of land, which slopes steeply down towards the north tin the direction of Appellees' Swim Pond and Lower Pond. Appellant's residence was constructed in about 2004 at the elevation of the plateau of land. As of early 2008, surface water from Appellant's property flowed by surface or sheet flow northerly over the edge of the plateau onto Appellees' property between the Swim Pond and the Lower Pond, some of the water then flowed slightly northeasterly into the Swim

---

[1] All the elevations in this decision are taken from Appellant's Ex. C, the overall property plan of the Thomas Road subdivision.

Pond and some of the water flowed slightly northwesterly into the Lower Pond.

In the summer of 2008 the Zoning Administrator issued a zoning permit to Appellees (the Berm Permit), which became final and is not at issue in the present case. It authorized Appellees to dig a third pond (the Upper Pond) in a location in the former Parcel 3-C portion of Appellees property where a depression or wet area had been located. The Upper Pond is located on Appellees' property on the plateau, to the south of Appellees' house, at approximately an elevation of 176–178 feet above sea level. Prior to the construction of the Upper Pond, drainage from that wet area traveled over land in sheet flow or poorly-defined natural drainage swales in a generally northerly direction, towards Appellees' house and past it towards the Swim Pond, as well as northeasterly towards a culvert under Appellees' driveway.

The Berm Permit also authorized Appellees to use the fill extracted from the Upper Pond to construct a berm, which was meant to prevent the surface water flowing off Appellant's property from entering and contaminating the Swim Pond. The berm and the Upper Pond were constructed in accordance with the Berm Permit.

In late September of 2008 the Zoning Administrator approved Appellees' application for the installation of a fifteen-inch-diameter pipe, referred to in the present appeal as a culvert. It was designed to have its inlet at the surface of the Upper Pond, to run under the Upper Pond and within the berm, and to exit on the southerly side of the berm, still on Appellees' property but near the boundary with Appellant's property. The application referred to the purpose of the pipe as being "to reestablish flow from [Upper] pond" and referred to the location of its outlet as being at "existing water collecting area." The culvert therefore was designed to carry the flow of surface water from the area of the Upper Pond through the berm and into the Lower Pond, bypassing the Swim Pond. Appellees installed the culvert in accordance with the permit; Appellant's appeal of it is the subject of this appeal.

3

The culvert permit was issued under the authority of § 1720.2 of the 2007 Zoning Bylaws.

This Court's March 5, 2010 summary judgment decision determined certain legal issues. It determined that § 1720.2 would be applicable only if the culvert project involved any additional extraction of earth materials for use off the site, or any additional fill, beyond that which had already been approved in the Berm Permit. The summary judgment decision, slip op. at 16, suggested that the Court would first need to hear evidence necessary to decide whether the culvert project required a § 1720.2 permit at all, or instead whether § 1720.1 is applicable. If § 1720.1 is applicable, the summary judgment decision stated that the matter would have to be remanded for the Zoning Administrator in the first instance to determine whether a special zoning permit should issue for the culvert under § 1720.1.

First, the evidence at trial showed that the culvert project did not involve any additional extraction of earth materials for use off the site, or any additional fill, beyond that which had already been approved in the Berm Permit. Section 1720.2 therefore is inapplicable to the culvert that is the subject of this appeal.

Section 1720.1 of the 2007 Zoning Bylaws states that "[t]here shall be no diversion, redirection[,] or relocation of any natural water course, drainage[,] or water runoff pattern unless a special zoning permit for that purpose is obtained from the administrative officer."

The term "natural" cannot be interpreted to mean the state of the area's watercourses, drainage, and water runoff patterns as they existed prior to any human development at all. Equally, the term "natural" cannot be interpreted to mean the state of those features immediately prior to the application before the Court. Both of those extreme interpretations would create an absurd result or would make the term "natural" into surplusage in that regulatory provision. <u>Wesco, Inc. v.</u>

4

Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287 (citations omitted) (noting that the Court presumes that the legislature does not intend a statutory interpretation that would lead to an absurd result); Loiselle v. Barsalow, 2006 VT 61, ¶ 16, 180 Vt. 531 (mem.) (citing State v. Carroll, 2003 VT 57, ¶ 7, 175 Vt. 571 (mem.)) (noting that the Court presumes that the legislature "chooses its language advisedly so as not to create surplusage").

If the term "natural" were interpreted to refer only to the state of the area's drainage prior to any human development, the section would have very limited applicability in areas which are already somewhat developed. This would be an absurd interpretation, as areas that are undergoing development are the very areas which require zoning regulation of the potential effect of water diversion on neighboring properties. Cf. Hazen v. Perkins, 92 Vt. 414, 420 (1918) ("natural" lake level regulated and controlled by man-made dam and sluice at outlet); State v. Malmquist, 114 Vt. 96, 102 (Vt. 1944) (lake level artificially created by dam considered "natural" lake level after period of forty years). On the other hand, the use of the term "natural" at all in § 1720.1 would be surplusage if all diversion, redirection, or relocation of any water courses, drainage, or water runoff patterns required permits, regardless of whether they were considered natural or not.

Thus, to make sense of the term "natural" in § 1720.1, as applied in the present case, it must refer to the drainage pattern of the land before the berm and the Upper Pond were installed, but after all the other changes to the surrounding areas were made, including the site work, earth moving, and driveway culverts involved in the construction of both the Marks and the Krag houses, and of the Swim Pond.

At that time, drainage on both properties was by sheet flow off the plateau onto the lower land down to the 156-foot elevation level. Some of the drainage from the location of the Upper Pond on Appellees' property flowed towards Appellees'

5

house, and past it over the plateau edge towards the Swim Pond. The drainage or water runoff from Appellant's property flowed by sheet flow over the edge of the plateau to a low area or channel along the base of the plateau, some traveling northeasterly into the Swim Pond and some traveling northwesterly along the southerly edge of Appellees' property to the Lower Pond, and thence to a shallow, poorly defined channel traveling westerly and northerly across the flat, lowland area of Appellees' property to the river. In fact, drainage from Appellant's property over its northerly boundary to the Swim Pond was the reason that Appellees constructed the berm.

For the purposes of this decision, the result does not change depending on whether the low area or channel at the foot of the plateau near the southerly boundary of Appellees' property conducted water only westerly before the berm was constructed, or conducted some of it westerly and some of it easterly to the area of the swim pond. Regardless of the direction of that flow, the installation of the culvert or pipe from within the Upper Pond to southerly of the berm did not merely restore the previously existing natural drainage or water runoff pattern. The installation of the culvert or pipe from within the Upper Pond to southerly of the berm did not restore the flows from the area of the Upper Pond towards Appellees' house or past the house towards the Swim Pond. Nor did it restore the portion of the flow from the foot of the plateau near Appellant's house towards the Swim Pond. Rather, it redirected what would have been overflow from the Upper Pond to the channel southerly of the berm, so it would proceed to the Lower Pond and beyond it without flowing through or into the Swim Pond.

Because the culvert at issue in this case did not simply restore the drainage or water runoff pattern in existence prior to the construction of the berm and the Upper Pond, it required a permit under § 1720.1 of the 2006 Zoning bylaws.

6

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that § 1720.2 is not applicable to the culvert project, because it did not involve any additional extraction of earth materials for use off the site, or any additional fill, beyond that which had already been approved in the Berm Permit, but that the project does require a permit under § 1720.1; the culvert permit issued under § 1720.2 is therefore VACATED and REMANDED[2] to the Zoning Administrator for further proceedings consistent with this decision, concluding this appeal.

Done at Berlin, Vermont, this 31st day of August, 2011.

_____
Merideth Wright
Environmental Judge

---

[2]  If it is remanded, Appellant argues that it should be considered under § 2020.1 of the 2010 Zoning Bylaw.  The issue of whether Appellees' 2008 application gave Appellees any vested rights to be considered under the 2007 Bylaw is not before the Court in the present appeal; it would be an impermissible advisory opinion.